**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:

| | | |
|---|---|---|
| **THE ROMAN CATHOLIC CHURCH** | | |
| **OF THE ARCHDIOCESE OF NEW** | * | **CASE NO. 20-10846** |
| **ORLEANS** | * | |
| | * | **CHAPTER 11** |
| **vs.** | * | **SECT. "A"** |
| | * | |
| **RICHARD TRAHANT and** | | |
| **AMY O. TRAHANT** | | |
| *Plaintiffs,* | | |
| **V.** | | |
| | | |
| **MARK A. MINTZ, JONES WALKER,** | * | |
| **LLP,  AND DONLIN RECANO &** | * | |
| **COMPANY, INC.** | * | **ADV. NO. 23-1018** |
| *Defendants* | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF APPEAL**
**ON BEHALF OF RICHARD TRAHANT AND AMY O. TRAHANT**

**NOW INTO COURT,** through undersigned counsel, come plaintiffs, Richard and Amy Trahant ("Trahants"), and respectfully submit this *Notice of Appeal* pursuant to Federal Rules of Bankruptcy Procedure 8001, 8002 and 8003.

The Trahants hereby appeal the following adverse orders:

1. The Judgment Dismissing Complaint (R. Doc. 78);

2. The Judgment Dismissing Complaint (R. Doc. 81);

3. The Order referring the case to Bankruptcy Court (R. Doc. 12);

4. The Order denying the Trahants' Motion to Recuse signed by Judge Barry Ashe (R. Doc. 21);

5. The Memorandum Opinion and Order denying the Trahants' Motion to

Recuse Judge Meredith Grabill signed by Judge Meredith Grabill (R. Doc.

51)

6. The Memorandum Opinion and Order denying the Trahants' Motion to

Remand (R. Doc. 60).

The names of all potential "parties" to the Orders appealed from and the names, addresses

and telephone numbers of their respective attorneys are as follows:

| *The Roman Catholic Church of the Archdiocese of New Orleans* | *Richard Trahant, Plaintiff* |
|---|---|
| Mark A. Mintz<br>Samantha Oppenheim<br>Jones Walker LLP<br>201 St. Charles Avenue, 51st Floor<br>New Orleans, LA 70170<br>Telephone: (504) 582-8000<br>Facsimile: (504) 589-8260<br>mmintz@joneswalker.com<br>soppenheim@joneswalker.com | Jack E. Truitt<br>Kaylin Storey<br>The Truitt Law Firm, LLC<br>1321 Ochsner Blvd., Ste. 200<br>Covington, LA 70433<br>Telephone: (985) 327-5266<br>Facsimile: (985) 327-5252<br>btruitt@truittlaw.com<br>kstorey@truittlaw.com<br>jwertz@truittlaw.com |
| *Office of the U.S. Trustee* | *Amy Trahant, Plaintiff* |
| Eliane M. Archambeault<br>Jonathan Lloyd<br>400 Poydras Street, Suite 2110<br>New Orleans, LA 70130<br>Telephone no. (504) 589-4018<br>Fax no. (504) 589-4096<br>ustpregion05.nr.ecf@usdoj.gov<br><br>Jennifer Moore<br>300 Fannin Street, Suite 3196<br>Shreveport, LA 71101<br>Telephone: (318) 676-3456 | Jack E. Truitt<br>Kaylin Storey<br>The Truitt Law Firm, LLC<br>1321 Ochsner Blvd., Ste. 200<br>Covington, LA 70433<br>Telephone: (985) 327-5266<br>Facsimile: (985) 327-5252<br>btruitt@truittlaw.com<br>kstorey@truittlaw.com<br>jwertz@truittlaw.com |
| *Mark A. Mintz, Defendant* | *Jones Walker, LLP, Defendant* |
| Brandon Naquin<br>Kathryn Munson<br>Richard C. Stanley<br>Stanley Reuter Thornton Alford, LLC | Brandon Naquin<br>Kathryn Munson<br>Richard C. Stanley<br>Stanley Reuter Thornton Alford, LLC |

| | |
|---|---|
| 900 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70112<br>Telephone: (504) 523-1580<br>Facsimile: (504) 524-0069<br>ban@stanleyreuter.com<br>kwm@stanleyreuter.com<br>rcs@stanleyreuter.com | 900 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70112<br>Telephone: (504) 523-1580<br>Facsimile: (504) 524-0069<br>ban@stanleyreuter.com<br>kwm@stanleyreuter.com<br>rcs@stanleyreuter.com |
| *Donlin Recano & Company, Inc.,*<br>*Defendant*<br><br>Brandon Naquin<br>Kathryn Munson<br>Richard C. Stanley<br>Stanley Reuter Thornton Alford, LLC<br>900 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70112<br>Telephone: (504) 523-1580<br>Facsimile: (504) 524-0069<br>ban@stanleyreuter.com<br>kwm@stanleyreuter.com<br>rcs@stanleyreuter.com | |

WHEREFORE, Richard and Amy Trahant respectfully request that the appeal and its record be designated and transmitted.

Dated: July 25, 2024.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

_____/S/ Jack E. Truitt_____
JACK E. TRUITT, BAR NO. 18476, T.A.
MICHELLE MAYNE DAVIS, BAR NO. 23027
KAYLIN K. STOREY, BAR NO. 39721
LOU ANNE MILLIMAN, BAR NO. 23869
1321 Ochsner Boulevard, Suite 200
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for Richard C. Trahant and Amy O. Trahant

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those participants in the CM/ECF filing system. I further certify that there are no non-participants in the CM/ECF system.

_____/S/ Jack E. Truitt_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO: 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH | § | CHAPTER 11 |
| OF THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | |

---

| | | |
|---|---|---|
| RICHARD TRAHANT AND AMY O. | § | |
| TRAHANT, | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | ADV. NO. 23-1018 |
| V. | § | |
| | § | |
| MARK A. MINTZ, JONES WALKER, | § | |
| LLP, AND DONLIN RECANO & | § | |
| COMPANY, INC., | § | |
| | § | |
| DEFENDANTS. | § | |

## JUDGMENT DISMISSING COMPLAINT

Pursuant to this Court's *Memorandum Opinion and Order* dated contemporaneously herewith, [ECF Doc. 76],

**IT IS ORDERED** that the *Petition For Damages*, [ECF Doc. 7], as amended, [ECF Doc. 14], filed by Richard Trahant and Amy O. Trahant is **DISMISSED**.

New Orleans, Louisiana, July 16, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § §  § | CASE NO: 20-10846 |
| THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, | § § § § | CHAPTER 11

SECTION A |
| DEBTOR. | § § | |

| | | |
|---|---|---|
| RICHARD TRAHANT AND AMY O. TRAHANT,

       PLAINTIFFS,

V.

MARK A. MINTZ, JONES WALKER, LLP, AND DONLIN RECANO & COMPANY, INC.,

       DEFENDANTS. | § § § § § § § § § § § § § | ADV. NO. 23-1018 |

### JUDGMENT DISMISSING COMPLAINT

Pursuant to this Court's *Memorandum Opinion and Order* dated contemporaneously herewith, [ECF Doc. 76],

**IT IS ORDERED** that the *Petition For Damages*, [ECF Doc. 7], as amended, [ECF Doc. 14], filed by Richard Trahant and Amy O. Trahant is **DISMISSED**.

New Orleans, Louisiana, July 16, 2024.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

United States Bankruptcy Court

Eastern District of Louisiana

Trahant,

    Plaintiff                                                       Adv. Proc. No. 23-01018-MSG

Mintz,

    Defendant

# CERTIFICATE OF NOTICE

| District/off: 053L-2 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jul 17, 2024 | Form ID: pdf891 | Total Noticed: 5 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 19, 2024:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | The Roman Catholic Church of the Archdiocese of Ne, c/o Jones Walker LLP, 201 St. Charles Avenue, Suite 5100, New Orleans, LA 70170-5101 |
| ust | + | Eliane M Archambeault, DOJ-Ust, 400 Poydras, Suite 2110, New Orleans, LA 70130-3238 |
| ust | + | Jennifer Moore, DOJ-Ust, 300 Fannin Street, Suite 3196, Shreveport, LA 71101-3122 |
| ust | + | Jonathan Lloyd, DOJ-Ust, 400 Poydras St, Suite 2110, New Orleans, LA 70130-3238 |

TOTAL: 4

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion05.nr.ecf@usdoj.gov | Jul 17 2024 19:08:00 | Office of the U.S. Trustee, 400 Poydras Street, Suite 2110, New Orleans, LA 70130-3238 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 19, 2024                       Signature:       /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 16, 2024 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Brandon Naquin | |
| | on behalf of Defendant Mark A Mintz ban@stanleyreuter.com |
| Brandon Naquin | |
| | on behalf of Defendant Jones Walker LLP ban@stanleyreuter.com |

Brandon Naquin
     on behalf of Defendant Donlin Recano & Company  Inc. ban@stanleyreuter.com

Jack E Truitt
     on behalf of Plaintiff Richard Trahant btruitt@truittlaw.com  jwertz@truittlaw.com

Jack E Truitt
     on behalf of Plaintiff Amy O. Trahant btruitt@truittlaw.com  jwertz@truittlaw.com

Kathryn Munson
     on behalf of Defendant Mark A Mintz kwm@stanleyreuter.com

Kathryn Munson
     on behalf of Defendant Donlin Recano & Company  Inc. kwm@stanleyreuter.com

Kathryn Munson
     on behalf of Defendant Jones Walker LLP kwm@stanleyreuter.com

Kaylin Storey
     on behalf of Plaintiff Richard Trahant kstorey@truittlaw.com

Kaylin Storey
     on behalf of Plaintiff Amy O. Trahant kstorey@truittlaw.com

Mark Mintz
     on behalf of Debtor The Roman Catholic Church of the Archdiocese of New Orleans mmintz@joneswalker.com
     mark-mintz-4822@ecf.pacerpro.com

Richard C. Stanley
     on behalf of Defendant Jones Walker LLP rcs@stanleyreuter.com

Richard C. Stanley
     on behalf of Defendant Mark A Mintz rcs@stanleyreuter.com

Richard C. Stanley
     on behalf of Defendant Donlin Recano & Company  Inc. rcs@stanleyreuter.com

Samantha Oppenheim
     on behalf of Debtor The Roman Catholic Church of the Archdiocese of New Orleans soppenheim@joneswalker.com
     samantha-oppenheim-7970@ecf.pacerpro.com

TOTAL: 15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD TRAHANT, *et al.*                    CIVIL ACTION

VERSUS                                        NO. 23-2053

MARK A. MINTZ, *et al.*                       SECTION M (2)

### <u>ORDER</u>

Before the Court is the request of defendants Mark A. Mintz, Jones Walker, LLP, and Donlin Recano & Company, Inc. (collectively, "Defendants") for reference of this case to the bankruptcy judge under Local Rule 83.4.1 and the general order of reference.[1]

Plaintiffs Richard and Amy Trahant filed this suit in state court, asserting claims for abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium in connection with the Defendants' service of an order issued by the bankruptcy judge.[2] The Defendants removed the case to this Court based in part upon bankruptcy subject-matter jurisdiction under 28 U.S.C. § 1334(b) because, they say, plaintiffs' "claims arise in a case under title 11 and implicate core proceedings."[3] Thereafter, plaintiffs filed a motion to remand the case back to state court, contending that either mandatory or permissive abstention applied.[4] The motion to remand remains pending.

Having considered the Defendants' request for referral, the record, and the applicable law and rules of court, this Court has determined that the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer the case to the

---

[1] R. Doc. 11.
[2] R. Docs. 1-1; 1-4.
[3] R. Doc. 1.
[4] R. Docs. 9; 9-1.

bankruptcy judge for determination in the first instance of the issues raised by the motion to remand. At bottom, the case was removed on grounds of bankruptcy jurisdiction because the plaintiffs' claims revolve around the interpretation, implementation, and enforcement of an order of the bankruptcy court. It appears to this Court, then, that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding, *see, e.g.,* *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006) (classifying a state-law action as a core proceeding because the complained-of conduct would not have arisen but for duties discharged by the defendant, court-appointed counsel of the trustee, in the administration of the bankruptcy estate); *Hadi v. McCune Wright Anevalo LLP*, 2018 WL 6675622, at *8-10 (C.D. Cal. Dec. 17, 2018) (concluding that because plaintiff's claims "could not have existed in the absence of the [b]ankruptcy [a]ction," they constitute a core bankruptcy proceeding), or, at least, a proceeding related to a title 11 case. *See, e.g.,* *Lawrence v. Goldberg*, 573 F.3d 1265, 1270-71 (11th Cir. 2009) (concluding that claims against a trustee and the trustee's professionals for administrative-type acts are at least "related to" the bankruptcy proceeding); *Helmer v. Pogue*, 2012 WL 5231153, at *4-6 (N.D. Ala. Oct. 22, 2012) (same, as for claims against a debtor-in-possession and his counsel for administrative-type acts). *See also In re Burch*, 835 F. App'x 741, 748 (5th Cir. 2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders.'") (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). However, the determination of these threshold issues, as raised by the motion to remand, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine, which vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy

court concerning acts done in their official capacity.  *See*, *e.g.*, *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) (discussing and applying *Barton v. Barbour*, 104 U.S. 126 (1881)), *petitions for cert. filed*, No. 22-631 (U.S. Jan. 9. 2023), *and* No. 22-669 (U.S. Jan. 20, 2023); *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015).  As the *Highland Capital* court described its holding in *Villegas*, "we left to the bankruptcy court, faced with pre-approval of a claim, to determine whether it had subject matter jurisdiction over that claim in the first instance," meaning that this Court (like the Fifth Circuit in *Highland Capital*) "need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim falling under the widest interpretation of the gatekeeper provision" but can "leave that to the bankruptcy court in the first instance." *Highland Cap.*, 48 F.4th at 439.  This manner of proceeding is both sound, in that it achieves efficiency in the administration of justice, and necessary, in light of the bankruptcy court's special interest and charge under the *Barton* doctrine.  Accordingly,

IT IS ORDERED that this case is REFERRED to the bankruptcy court for all purposes, including, but not limited to, disposition of the pending motion to remand (R. Doc. 9) and consideration of the *Barton* doctrine's gatekeeping issues as raised in the request for reference (R. Doc. 11).

New Orleans, Louisiana, this 14th day of July, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD C. TRAHANT, *et al.*                    CIVIL ACTION

VERSUS                                          NO. 23-2053

MARK A. MINTZ, *et al.*                         SECTION M (2)

**<u>ORDER & REASONS</u>**

Before the Court is a motion[1] filed by plaintiff Richard C. Trahant pursuant to 28 U.S.C. § 144, seeking the recusal of the bankruptcy judge presiding over the matter (including the pending motion to remand) that this Court referred to the bankruptcy court.[2] Defendants Mark A. Mintz, Jones Walker, LLP, and Donlin Recano & Company, Inc. (collectively, "Defendants") oppose the motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Trahant's motion.

## I.   BACKGROUND

Plaintiffs (Trahant and his wife) filed this suit in state court, asserting claims for abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium, all in connection with the Defendants' service of an order issued by the bankruptcy judge in the pending bankruptcy case filed by the Roman Catholic Church of the Archdiocese of New Orleans.[4] Defendants removed the action to this Court based in part upon bankruptcy subject-matter jurisdiction under 28 U.S.C. § 1334(b), because, they say, plaintiffs' "claims arise in a case under

---

[1] R. Doc. 19. Trahant filed an affidavit pursuant to 28 U.S.C. § 144. Although he has not filed a motion to accompany the affidavit, because the defendants have filed an opposition, the affidavit will be treated as a motion and will be referred to as the "motion." *See United States v. Saeid*, 56 F.3d 1386, 1995 WL 337932, at *1 (5th Cir. 1995) ("Under § 144, a party must timely file a motion to recuse, accompanied by an affidavit stating the facts and reasons supporting the motion.").
[2] R. Docs. 12; 18.
[3] R. Doc. 20.
[4] R. Docs. 1-1; 1-4.

title 11 and implicate core proceedings."[5]  Thereafter, plaintiffs filed a motion to remand the case

back to state court, contending that either mandatory or permissive abstention applied.[6]  To the

Court's knowledge, the motion to remand remains pending.

Defendants subsequently filed a request for reference to the bankruptcy court under Local

Rule 83.4.1 and the district's general order of reference.[7]  The Court, in its July 14, 2023 Order

(the "Order of Reference"), referred the action upon finding that plaintiffs' claims implicated the

bankruptcy court's gatekeeping function under the *Barton* doctrine.[8]  Plaintiffs then filed a motion

for reconsideration, or, alternatively, withdrawal of the Order of Reference, which the Court

denied.[9]

## II.    PENDING MOTION

Trahant filed the present motion pursuant to 28 U.S.C. § 144, seeking recusal of the

bankruptcy judge because of her "personal bias and/or prejudice against [him] and in favor of

named defendants."[10]  His affidavit recounts the $400,000 sanction the bankruptcy judge imposed

against him and the events leading to it.[11]  The affidavit also makes certain factual assertions

purporting to support Trahant's charges that the bankruptcy judge is biased in favor of

Defendants.[12]

In opposition, Defendants argue that the recusal demand should be denied because: (1) §

144 applies only to the recusal of district judges, not bankruptcy judges; and (2) in any event, §

144 motions/affidavits must be filed before and reviewed by the judge who is the subject of

---

[5] R. Doc. 1 at 6.
[6] R. Docs. 9; 9-1.
[7] R. Doc. 11.
[8] R. Doc. 12.
[9] R. Doc. 18.
[10] R. Doc. 19.
[11] R. Doc. 20 at 1-4.
[12] *Id.* at 5.

recusal.[13]  Defendants also request that, if the Court intends to address the allegations in the § 144

affidavit, the recusal demand be noticed for submission to allow additional briefing.[14]

## III.    LAW & ANALYSIS

The Supreme Court's "precedents set forth an objective standard that requires recusal when

the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'"

*Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (quoting *Caperton v. A.T. Massey Coal Co.*, 556

U.S. 868, 872 (2009)).  "A motion to recuse must be strictly construed for form, timeliness, and

sufficiency in order to guard against the danger of frivolous attacks on the orderly process of

justice."  *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110, 1113 (E.D.

La. 1986).  "To be timely, a motion to recuse must be filed as soon as practicable after discovery

of the allegedly disqualifying facts."  *Id.* at 1114.  Motions to disqualify a judge can be brought

under 28 U.S.C. § 144 or 28 U.S.C. § 455, or both.  In this instance, Trahant brings his motion

pursuant to § 144 only.

### A.  Recusal Under 28 U.S.C. § 144

Pursuant to 28 U.S.C. § 144, "[w]henever a party to any proceeding in a district court

makes and files a timely and sufficient affidavit that the judge before whom the matter is pending

has a personal bias or prejudice either against him or in favor of any adverse party, such judge

shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  In

contrast to 28 U.S.C. § 455, section 144 "relates only to charges of actual bias."  *Patterson v. Mobil

Oil Corp.*, 335 F.3d 476, 483 (5th Cir. 2003).  "A legally sufficient affidavit must meet the

following requirements: (1) the facts must be material and stated with particularity; (2) the facts

must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts

---

[13] *Id.* at 2-7.
[14] *Id.* at 7-8.

3

must show the bias is personal, as opposed to judicial, in nature." *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990). At this juncture, Defendants defer addressing whether Trahant's affidavit satisfies these requirements, opting instead to challenge the recusal demand on two procedural grounds.

### B. Analysis

#### 1. 28 U.S.C. § 144 Applies Only to District Court Judges

First, Defendants argue that 28 U.S.C. § 144 applies only to the recusal of district judges, not bankruptcy judges. As stated above, by its express terms, § 144 pertains to affidavits filed by "a party to any proceeding in a *district court*." (Emphasis added.) Reading the plain language of the statute, § 144 applies only to the recusal of district judges; it does not apply to bankruptcy judges. Unsurprisingly, then, the Fifth Circuit has held that § 144 "by its terms applies only to district judges." *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979). Other courts within this circuit have likewise held that "the application of section 144, unlike section 455, is limited to district court judges. It is not applicable to bankruptcy judges or federal appellate judges." *In re Foster Iron Works, Inc.*, 3 B.R. 715, 718 (S.D. Tex. 1980) (citing *Hepperle*, 590 F.2d at 613 and *Pilla v. Am. Bar Ass'n*, 542 F.2d 56, 58 (8th Cir. 1976), for the proposition that § 144 does not apply to federal appellate judges, and *Dubnoff v. Goldstein*, 385 F.2d 717, 720 (2d Cir. 1967), for the proposition that § 144 does not apply to bankruptcy referees); *see also In re Syntax-Brillian Corp.*, 400 B.R. 21, 25 (Bankr. D. Del. 2009) ("It is well settled that another federal judicial disqualification statute, 28 U.S.C. § 144, applies only to district court judges, and not bankruptcy judges."); *In re Kayati*, 2018 WL 722705, at *3 (Bankr. D.N.J. Feb. 5, 2018) (collecting cases holding likewise).

4

Further, Rule 5004 of the Federal Rules of Bankruptcy Procedure provides that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance[] arises or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. 5004. Rule 5004 does not mention disqualification of a bankruptcy judge under 28 U.S.C. § 144. *See In re Lieb*, 112 B.R. 830, 833 n.1 (Bankr. W.D. Tex. 1990) ("Bankruptcy Rule 5004 provides that a bankruptcy judge shall be governed by 28 U.S.C. § 455. Defendants were correct in bringing this motion under 28 U.S.C. § 455 and not pursuant to 28 U.S.C. § 144. '28 U.S.C. § 144 applies, by its express terms, to district court proceedings only.'") (quoting *In re B & W Management, Inc.*, 86 B.R. 1, 2 n.5 (D.D.C. 1988)).

In sum, because § 144 applies only to the recusal of district judges, not bankruptcy judges, and because Trahant's motion (affidavit) is filed in this district court and is predicated exclusively on § 144, it must be denied.

## 2. Additionally, a Section 144 Affidavit Must Be Filed Before the Judge Who Is the Subject of the Recusal Demand

Second, Defendants argue that a recusal demand under 28 U.S.C. § 144 must be presented to the judge sought to be recused. Again, § 144 provides that "[w]henever a party ... makes and files a timely and sufficient affidavit that *the judge before whom the matter is pending* has a personal bias or prejudice either against him or in favor of any adverse party, *such judge* shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144 (emphasis added). The implication of the statutory language (and the prevailing practice in federal courts) is that "the judge before whom the matter is pending" has the duty to determine whether recusal is warranted – including, in the case of § 144 motions, the duty to determine whether the affidavit is timely and legally sufficient. *See, e.g.*, *Broome v. Simon*, 255 F. Supp.

5

434, 437 (W.D. La. 1965) ("[T]he judge against whom the affidavit is made should himself act upon it.").[15]  Thus, the instant motion must also be denied because it was not filed before the bankruptcy judge.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the § 144 motion filed by plaintiff Richard C. Trahant is DENIED.

New Orleans, Louisiana, this 19th day of September, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[15] However, "the judge has the option to either transfer the matter to another judge for decision or determine it herself."  *Maldonado v. Ashcroft*, 108 F. App'x 221, 222 (5th Cir. 2004).

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH OF | § | CHAPTER 11 |
| THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |
| | § | |
| RICHARD TRAHANT AND | § | |
| AMY O. TRAHANT, | § | |
| | § | |
| PLAINTIFFS, | § | ADVERSARY NO. 23-1018 |
| | § | |
| V. | § | |
| | § | |
| MARK A. MINTZ, JONES WALKER LLP, | § | |
| AND DONLIN RECANO & COMPANY, | § | |
| INC., | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the *Affidavit of Richard Trahant Pursuant to 28 U.S.C. § 144* (the

"§ 144 Affidavit"), [ECF Doc. 17], and *Plaintiffs' Motion To Recuse Judge Meredith Grabill*

(the "Recusal Motion"), [ECF Doc. 36], filed in the above-captioned adversary proceeding (the

"Adversary Proceeding") pursuant to 28 U.S.C. §§ 144 and 455 on behalf of Richard and Amy

Trahant (the "Trahants"). Mark Mintz, Jones Walker LLP, and Donlin Recano & Company,

Inc., the named Defendants in the Adversary Proceeding, have opposed the § 144 Affidavit and

Recusal Motion, [ECF Docs. 22 & 38], and the Trahants have filed a reply brief in support of

their pleadings, [ECF Doc. 39]. Having listened to oral argument on October 18, 2023, and

having reviewed the pleadings, memoranda, and the relevant law, the Court finds the § 144 Affidavit and the Recusal Motion to be without merit.

## PROCEDURAL POSTURE

On May 1, 2020, The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or, post-petition, the "Debtor") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code in this Court. [No. 20-10846, ECF Doc. 1]. Prior to filing, the Archdiocese had been defending against at least 34 pending lawsuits filed in Louisiana state court between 2018 and 2020 by individuals alleging claims of sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse (the "Abuse Cases"). Richard Trahant represented plaintiffs in some of the Abuse Cases. Upon filing for bankruptcy relief, all of the Abuse Cases were stayed pursuant to 11 U.S.C. § 362(a), but several of the plaintiffs and their counsel in the Abuse Cases, including Trahant, mobilized quickly and participated from the very start of the Debtor's bankruptcy case.

The Office of the United States Trustee ("UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1) on May 20, 2020, and reconstituted the membership of the Committee a number of times to deal with the contours of the case. [No. 20-10846, ECF Docs. 94, 151, 478, 1575, 1618 & 2081]. Early in the case, the Court approved the Committee's retention of the law firms of Locke Lord LLP ("Locke Lord") and Pachulski Stang Ziehl & Jones LLP ("Pachulski") as counsel for the Committee. [No. 20-10846, ECF Docs. 256 & 257]. Individual members of the Committee retained their own counsel to advise them regarding their individual claims against the estate and to assist them in fulfilling their duties as members of the Committee. For two years, Richard Trahant served as counsel to several individual members of the Committee. In late July 2021, the Committee and

2

the Debtor jointly moved this Court for the appointment of Bankruptcy Judge Gregg Zive to mediate the claims filed by over 450 sexual abuse claimants. [No. 20-10846, ECF Doc. 982]. The Court approved that request on September 15, 2021. [No. 20-10846, ECF Doc. 1058].

In January 2022, the Debtor notified the Court of its belief that individual(s) had breached this Court's Protective Order governing discovery exchanged between the Debtor and the Committee in the Debtor's bankruptcy case. The Debtor requested discovery from the Committee and an evidentiary hearing to determine the root of the breach. After months of informal discovery between the parties followed by an official independent investigation by the UST involving numerous depositions and robust discovery, the Court memorialized and detailed its conclusions in a *Memorandum Opinion and Order* dated June 7, 2022. In that Order, the Court found, among other things, that Trahant had knowingly and willfully violated the Protective Order by disclosing confidential, protected information obtained through discovery in the bankruptcy case to third parties including the media. The Court's June 7, 2022 Order also instructed the UST to remove the individual Committee members represented by Trahant from the Committee. A week later, the Court issued a separate *Order To Show Cause* to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of the Court's Protective Order. Months later, the Court held the show-cause hearing. After considering attorney argument and sworn testimony provided by Trahant at that hearing, the Court issued a *Memorandum Opinion and Order* dated October 11, 2022, detailing the factual and legal bases for imposing sanctions against Trahant in the amount of $400,000 for willfully violating this Court's Protective Order. That amount represented a fraction of the billable time spent by counsel for the Debtor and the Committee in investigating the source of the leak for

months and participating in the formal, independent investigation conducted by the UST. [No. 20-10846, ECF Docs. 1574, 1589 & 1844].[1]

On June 2, 2023, the Trahants filed a *Petition for Damages* in Louisiana state court against the Defendants, asserting claims for abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium, all in connection with the Defendants' alleged improper service of this Court's June 7, 2022 Order. [ECF Doc. 7]. The Defendants timely removed the case to the United States District Court for the Eastern District of Louisiana under 28 U.S.C. §§ 1441, 1446, and 1452, and the case was assigned to Judge Ashe. [E.D. La. No. 23-2053, ECF Doc. 1]. The Trahants moved to remand the case to state court (the "Remand Motion"). [E.D. La. No. 23-2053, ECF Doc. 9]. The Defendants requested Judge Ashe to refer the case to this Court pursuant to the District Court's local rules and its General Order of Reference, asserting that the Trahants' lawsuit was not only "related to" the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(b), but that the lawsuit implicates the long-standing *Barton* doctrine, a common-law principle that bars suits against court-appointed trustees and other fiduciaries absent court permission. [E.D. La. No. 23-2053, ECF Doc. 11 (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)]. On July 14, 2023, Judge Ashe referred the Trahants' lawsuit to this Court for all purposes, finding that

---

[1] Trahant and individual former members of the Committee appealed those Orders to the United States District Court for the Eastern District of Louisiana. *See In re The Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1738 (E.D. La. Aug. 11, 2022) (ECF Doc. 38 (dismissing former Committee members' appeal for lack of standing) & (E.D. La. June 21, 2023) (ECF Doc. 74 (declining Committee members' request to vacate ECF Doc. 38)); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. Mar. 27, 2023) (ECF Doc. 88 (affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. June 21, 2023) (ECF Doc. 107 (denying Trahant's motions for rehearing and to vacate ECF Doc. 88 and corresponding judgments, but substituting Order and Reasons affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022). The matters are now pending on appeal with the United States Court of Appeals for the Fifth Circuit. *See Trahant v. Official Comm. of Unsecured Creditors*, No. 23-30466 (filed July 21, 2023) (consolidated with No. 22-30539).

the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to remand. At bottom, the case was removed on grounds of bankruptcy jurisdiction because the plaintiffs' claims revolve around the interpretation, implementation, and enforcement of an order of the bankruptcy court. It appears to this Court, then, that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding [under 28 U.S.C. § 157(b)(2)] . . . or, at least, a proceeding related to a title 11 case. However, the determination of these threshold issues, as raised by the motion to remand, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine, which vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy court concerning acts done in their official capacity.

[E.D. La. No. 23-2053, ECF Doc. 12 (internal quotations and citation omitted)]. Upon referral to this Court, the Trahants' lawsuit was docketed as the Adversary Proceeding. On August 15, 2023, Judge Ashe denied the Trahants' motion to reconsider his decision and withdraw his referral of the lawsuit to this Court, writing:

[T]he Court again concludes that reference to the bankruptcy court for the determination of certain pretrial issues (including subject-matter jurisdiction) in the first instance is appropriate where plaintiffs' claims and their pending motion to remand implicate the bankruptcy court's gatekeeping function under the *Barton* doctrine. . . . And relatedly, under its gatekeeping function, the bankruptcy court is empowered to determine—in the first instance—whether subject-matter jurisdiction exists, and so it may properly adjudicate plaintiffs' motion to remand. Thus, plaintiffs' contention that reversal or withdrawal of the reference is proper because the action fails even to invoke "related to" jurisdiction under 28 U.S.C. § 1334(b) is inapposite.

[E.D. La. No. 23-2053, ECF Doc. 18 (internal quotations and citations omitted)].

After receiving those rulings, on August 23, 2023, the Trahants filed into the District Court record an *Affidavit of Richard Trahant Pursuant to 28 U.S.C. § 144*. [E.D. La. No. 23-2053, ECF Doc. 19]. The Defendants filed a response to that affidavit. Interpreting the filing of the affidavit as a motion seeking the recusal of this Court from presiding over the Trahants'

lawsuit, Judge Ashe, relying on Fifth Circuit precedent, found that § 144 applies only to the recusal of district judges, not to bankruptcy judges. [E.D. La. No. 23-2053, ECF Doc. 21 (quoting *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979)]. He further observed that a motion to recuse must be filed before the judge against whom the request for recusal is directed. *See id*.

## DISCUSSION

The Trahants now ask this Court to recuse from hearing the Adversary Proceeding under 28 U.S.C. § 144, as well as 28 U.S.C. §§ 455(a) and (b)(1), asserting that the undersigned has personal bias or prejudice against them.[2] The Court will address the § 144 Affidavit and Recusal Motion separately.

---

[2] In their memorandum in support of the § 144 Affidavit and Recusal Motion, the Trahants also make arguments concerning this Court's subject-matter jurisdiction to hear the Adversary Proceeding. *See* Recusal Motion, Mem. at 1–4. Those arguments are not germane to the instant Recusal Motion, but are relevant to the pending Remand Motion; thus, the Court defers consideration of those arguments for now. Likewise, the Trahants have asserted their desire to conduct discovery to be able to respond to the pending motion for summary judgment filed by the Defendants. *See* Recusal Motion, Mem. at 2. That request is also premature at this time.

The Trahants further assert that this Court will become a fact witness if called upon to interpret its own orders and instructions regarding service of the June 7, 2022 Order, and thus should be disqualified from hearing the Adversary Proceeding. *See* Recusal Motion, Mem. at 12–13. It is appropriate, however, for a bankruptcy court to interpret its own orders. Indeed, to the extent that any confusion exists in any of a bankruptcy court's orders, the Fifth Circuit instructs that it will "defer to the bankruptcy court's reasonable resolution of . . . ambiguities in [its own orders]." *Matter of AKD Inv*., 79 F.4th 487, 491 (5th Cir. 2023) (quoting *In re Nat'l Gypsum Co*., 219 F.3d 478, 484 (5th Cir. 2000)). Thus, "[a]ttempts to disqualify judges by indicating that the judge will be called as a witness are not favored and are rarely granted." *Snarr v. United States*, No. 13-724, 2023 WL 4237095, at *14 (E.D. Tex. June 28, 2023). "Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning." *Id*. (quoting *United States v. Anderson*, 560 F.3d 275, 282 (5th Cir. 2009)). Therefore, the Court rejects as a basis for disqualification the Trahants' erroneous assertion that this Court will sit as fact witness in the Adversary Proceeding.

6

### A. Section 144 of Title 28 of the United States Code Is Inapplicable to Bankruptcy Courts.

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

Applying the straightforward textual interpretation used by the Fifth Circuit in *Hepperle*, Judge Ashe concluded that § 144 "by its terms applies only to district judges." [E.D. La. No. 23-2053, ECF Doc. 21, at 4].[3] That conclusion is supported by the majority of courts across the country. *See, e.g.*, *Stasz v. Gonzalez (In re Stasz)*, Nos. 11-1050 & 05-43980, 2011 WL 6934442, at *4 (B.A.P. 9th Cir. Nov. 30, 2011); *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (B.A.P. 9th Cir. 1996); *Dubnoff v. Goldstein*, 385 F.2d 717, 720 (2d Cir. 1967); *Ginger v. Cohn*, 255 F.2d 99, 99–100 (6th Cir. 1958); *In re B&W Mgmt., Inc.*, 86 B.R. 1, 2 n.5 (D.D.C. 1988); *In re Krichesvsky*, 640 B.R. 524, 537–38 (Bankr. E.D.N.Y. 2022); *In re Loy*, Nos. 07-21040 & 09-51379, 2011 WL 5118462, at *4 (Bankr. E.D. Va. Oct. 27, 2011); *Rhiel v. Hook (In re Johnson)*, 408 B.R. 123, 125 (Bankr. S.D. Ohio 2009); *In re Syntax-Brillian Corp.*, 400 B.R. 21, 25 (Bankr.

---

[3]     The Court's skepticism expressed at a scheduled hearing in this case on September 6, 2023, regarding whether § 144 applies to bankruptcy courts led the Court to encourage the Trahants to file a motion to recuse under § 455. Prior to the Trahants' filing of the instant Recusal Motion before this Court, Judge Ashe issued his Order & Reasons finding that § 144 is inapplicable to bankruptcy judges. In the Trahants' memorandum in support of the § 144 Affidavit and the Recusal Motion and at the hearing on the matter before this Court, counsel for the Trahants asserted that Judge Ashe "inappropriately acted" in ruling on the § 144 Affidavit filed in the District Court as the matter had by that time been referred to this Court. *See* Recusal Motion, Mem. at 2; [ECF Doc. 43]. Thus, counsel asserted, this Court is not bound by Judge Ashe's ruling and is "empowered to rule." Recusal Motion, Mem. at 2; *see also* [ECF Doc. 43].

D. Del. 2009); *In re Hussey*, 391 B.R. 911, 918 (Bankr. S.D. Fla. 2008); *In re Mondelli*, No. 04-15268, 2008 WL 234226, at *8 (Bankr. D.N.J. Jan. 24, 2008); *In re Williams*, 99 B.R. 70, 71 (Bankr. D.N.M. 1989); *Hessen v. Beagan (In re Teltronics Servs., Inc.)*, 39 B.R. 446, 451 (Bankr. E.D.N.Y. 1984); *In re Foster Iron Works, Inc*., 3 B.R. 715, 718 (S.D. Tex. 1980). That plain-text reading of § 144 is further buttressed by the text of Federal Rule of Bankruptcy Procedure 5004, which states that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455," but notably omits any reference to § 144. FED. R. BANKR. P. 5004(a). This Court adopts the reasoning of all of the above-cited courts and finds that § 144 by its plain terms does not apply to bankruptcy judges.

But even if § 144 were to apply to bankruptcy judges, the Trahants' understanding of how that statute functions is incomplete. The Trahants assert that the filing of an affidavit under § 144 asserting personal bias or prejudice on the part of a judge automatically triggers the reassignment of the matter to another judge. *See* § 144 Affidavit, ¶ 3; Recusal Motion, Mem. at 3; [ECF Doc. 43]. That is not true. "Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged." *Henderson v. Dep't of Public Safety & Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990) (quoting *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty*., 517 F.2d 1044, 1051 (5th Cir. 1975)).

> A legally sufficient affidavit must meet the following requirements: (1) the facts must be material and stated with particularity; (2) the facts must be such that if true they would convince a reasonable man that a bias exists; and (3) the facts must show the bias is personal, as opposed to judicial, in nature.

*Id*. "Factor three 'means that the alleged attitude and preconception on the part of the judge must arise from a source beyond the four corners of the courtroom, and not from his participation in the case.'" *Casby v. St. Charles Parish Sheriff's Office*, No. 14-1706, 2014 WL 6684947, at *1 (E.D. La. Nov. 25, 2014) (quoting *Danielson v. Winnifield Funeral Home of Jefferson, Inc*., 634

F. Supp. 1110, 1115 (E.D. La. 1986)).  For the reasons given below in this Court's analysis of the Recusal Motion filed pursuant to 28 U.S.C. § 455, even if § 144 were to apply to bankruptcy courts, the Court would not in this instance find the § 144 Affidavit to be legally sufficient as it does not meet any of the factors required by the Fifth Circuit.

> ### B.       The Court Finds That a Reasonable, Objective Observer Would Not Harbor Doubts About the Court's Impartiality To Hear the Adversary Proceeding.

The issue of whether § 144 applies to bankruptcy judges is of no moment, however, because Congress amended § 455 in 1974 to "entirely duplicate[] the grounds of recusal set forth in § 144 ('bias or prejudice')."  *Liteky v. United States*, 510 U.S. 540, 548 (1994).  Those amendments "(1) made [the grounds of recusal] applicable to all justices, judges, and magistrates (and not just district judges), and (2) placed the obligation to identify the existence of those grounds upon the judge himself, rather than requiring recusal only in response to a party affidavit."  *Id*.  Indeed, the Fifth Circuit has given "[sections] 144 and 455 the same meaning legally . . . for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned."  *Davis*, 517 F.2d at 1052.

Under § 455, a party may request the recusal of a judge when "his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  And subsection (b) of § 455 identifies specific instances of conflicts of interest, including "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).  "[W]henever a judge's partiality might reasonably be questioned, recusal is required under § 455(a), irrespective whether the circumstance is covered by § 455(b)."  *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 n.8 (1988)).

### 1. *This Court will decide the Recusal Motion.*

As a preliminary matter, the Trahants cite to state court procedure to assert that another judge should decide the Recusal Motion. [ECF Doc. 43].[4] But this Court is bound by federal recusal statutes and precedent. Section 455(a) provides that "[a]ny . . . judge . . . **shall disqualify himself** in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). Section 455(b) likewise provides that "[h]e **shall also disqualify himself**" under certain enumerated circumstances. *Id.* § 455(b). "The statute is addressed to the judge whose recusal is in question and demands that the judge decide for him or herself whether to recuse." *United States v. Champlin*, 388 F. Supp. 2d 1177, 1180 (D. Haw. 2005); *see also, e.g., In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997) ("It might seem odd that recusal issues should be decided by the very judge whose recusal is in question. But there are other considerations at work, including a desire for expedition and a concern to discourage judge shopping."); *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982) ("The challenged judge is most familiar with the alleged bias or conflict of interest. He is in the best position to protect the nonmoving parties from dilatory tactics."); *Equal Emp'l Opportunity Comm'n v. Triple-S Vida, Inc.*, No. 21-1463, 2023 WL 4013377, at *2 (D.P.R. June 15, 2023); *Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 20-1338, 2021 WL 4460465, at *4 (E.D. La. Sept. 29, 2021) ("The issue of recusal requires a sensitive weighing of the circumstances in each case and is committed to the sound discretion of the district judge . . . because the judge presiding over the case is in the best position to appreciate the implications of those matters alleged in a recusal motion." (internal quotations and citations omitted)); *In re Wilborn*, 401 B.R. 848, 851 (Bankr. S.D. Tex. 2009) ("A motion to recuse is committed to the

---

[4]     The Court observes the Trahants' seemingly inconsistent arguments regarding this Court's responsibility to decide recusal issues. *See supra* note 3.

discretion of the targeted judge."); *In re Syntax-Brillian Corp.*, 400 B.R. 21, 25–26 (Bankr. D. Del. 2009).

> 2.   *Taken in context, a reasonable, objective person would not conclude that the Court's intrajudicial comments indicate a deep-seated antagonism that would make fair judgment impossible.*

"A motion to recuse must be strictly construed for form, timeliness, and sufficiency in order to guard against the danger of frivolous attacks on the orderly process of justice." *Carpenter v. BP Exploration & Prod. Inc.*, No. 17-3645, 2022 WL 2800014, at *2 (E.D. La. July 14, 2022) (citation omitted), *aff'd sub nom. Street v. BP Exploration & Prod. Inc.*, No. 22-30393, 2023 WL 6932629 (5th Cir. Oct. 20, 2023).  In evaluating § 455 motions, "[o]ne of the relevant maxims is that the standard for bias is not 'subjective,' as it once was, but, rather, 'objective.'" *Andrade*, 338 F.3d at 454 (citing *Vieux Carre Prop. Owners, Residents & Assocs. v. Brown*, 948 F.2d 1436, 1448 (5th Cir. 1991)).  The United States Supreme Court's "precedents set forth an objective standard that requires recusal when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable.'"  *Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009)); *see also Andrade*, 338 F.3d at 454.  "Courts moved to this less deferential [objective] standard in response to Congress's 1974 revisions to the 1948 statute, and it is with reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person' that the objective standard is currently established."  *Andrade*, 338 F.3d at 455 (quoting *United States v. Jordan,* 49 F.3d 152, 156 (5th Cir. 1995)).

"Another maxim is that review should entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents."  *Id.*  "Finally, the origin of a judge's alleged bias is of critical importance."  *Id.*  The Fifth Circuit instructs judges to

apply the "extrajudicial source rule" when interpreting and applying § 455. *See id.* (citing *Liteky*, 510 U.S. at 555). The "extrajudicial source rule" essentially "divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." *Id.* When a movant does not allege an extrajudicial bias, the judge's actions must indicate a "deep-seated" or "high degree" of "favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555–56.

In sum, "to bring a successful recusal petition under § 455(a) and (b)(1), the movant 'must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial, and (3) do so by an 'objective' observer's standard.'" *Casby v. St. Charles Parish Sheriff's Office*, No. 14-1706, 2014 WL 6684947, at *2 (E.D. La. Nov. 25, 2014) (quoting *Liteky*, 510 U.S. at 555–56). The Trahants, as the parties moving to recuse, bear "a heavy burden of proof" to show that the Court should recuse. *See, e.g.*, *Snarr v. United States*, No. 13-724, 2023 WL 4237095, at *3 (E.D. Tex. June 28, 2023) (citing *United States v. Reggie*, No. 13-111, 2014 WL 1664256, at *2 (M.D. La. Apr. 25, 2014)). "The recusal inquiry 'is extremely fact intensive and fact bound" and requires 'a close recitation of the factual basis for the . . . recusal motion' by the movant." *Id.* (quoting *Jackson v. Valdez*, 852 F. App'x 129, 133 (5th Cir. 2021)).

The vast majority of the Trahants' bases for this Court's recusal are statements expressed on the record by the Court within the course of judicial proceedings. When viewed in context, none of the Court's intrajudicial statements would indicate to a thoughtful, objective observer that the Court harbors a "deep-seated" or "high degree" of "antagonism that would make fair judgment impossible" vis-à-vis the Trahants.

12

        a.   Statement Group One: "During a February 11, 2022 Conference, Judge Grabill referenced a long-held suspicion that 'something else is going on here' since the 'start of this case.'" Recusal Motion, Mem. at 8.

After the Debtor filed a motion in January 2022 seeking discovery from the Committee and an evidentiary hearing to discover the source of the breach of this Court's Protective Order—and no party ever contested the fact that a leak had occurred—both parties voiced their preference to investigate the breach informally; to that end, the Court held a series of transcribed conferences to obtain updates on the parties' progress with discovery. On February 9, 2022, two days before the second scheduled transcribed conference among the Committee, the Debtor, and the UST, the Court received an e-mail from Soren Gisleson, one of the attorneys individually representing a Committee member. That e-mail copied counsel for the Committee, the Debtor, the UST, and other attorneys individually representing Committee members, including Trahant. That e-mail, sent on behalf of attorneys representing individual members of the Committee, essentially demanded to attend the conference and obtain discovery on subjects that implied that the breach of the Protective Order had originated with the Debtor itself. At the transcribed conference, counsel for the Committee and the Debtor updated the Court on their progress in conducting targeted discovery and addressed the February 9 e-mail. [ECF Doc. 1843-1, at 1–17]. Counsel for both the Committee and the Debtor assured the Court that recent stipulations entered between them regarding the scope and schedule for discovery would alleviate some of the more immediate concerns of everyone involved, including the concerns of counsel for individual Committee members. *See id*. But counsel for the Committee and the Debtor expressed concerns about how to keep moving forward with discovery and negotiations in the main bankruptcy case in light of the breach of the Protective Order. *See id*.

The Court made the following comments in response:

Well, my sole concern—I have a couple. One, the Court is always concerned when there's been an accusation of a breach of one of its orders. So I'm very invested in resolving that accusation.

But more importantly, as I stated last time, I'm very concerned. We are in—we are in mediation. Judge Zive is working 110 percent on this. And my concern is . . . how we move forward. We've got a hearing on the Motion To Compel [discovery] that we've continued . . . a lot. And we're dealing with those discovery issues and how are we supposed to move forward in making further productions if we've got a leak and we just don't know where the leak is and we don't have any mechanism in place to be able to trust the productions that are being made.

The [February 9] e-mail that the Court received yesterday was a little telling because, like we discussed last time . . . it's in the Committee's best interest to cooperate and find out . . . where this leak is. We know that sensitive information that I assume is not publicly available and was not available anywhere else, I'm making that assumption.

So with that assumption, I'm saying that ended up on the front page of the Times-Picayune. You know [a reporter] got the phone call. That didn't come out of nowhere. That came from somewhere. And, like I said, if that information is out there somewhere else that's publicly available or if it's . . somewhere else, then I am wrong. But I'm making the assumption that it was available through the Archdiocese and the productions that were made in this case.

So with that, the e-mail that I got yesterday was, instead of . . . it's in the best interest of the Committee and the Debtor when you go into mediation to have that level of trust to have as much information flowing freely between the two in order to work with Judge Zive. The e-mail I got yesterday indicated none of that. None of that concern. It indicated that . . . it's the Debtor's problem. It came from the Debtor. It was basically an accusation that the Debtor leaked its own documents. **There's something else going on**, you know, and that to me is not productive.

And I've been concerned **from the start of this case**—but I leave it to the Debtor and the Committee. But I've been concerned that there are conflicts of interest. And that's always the case. . . . I've represented committees and . . the Committee itself has its counsel and of course every individual member of the Committee has their own counsel. And there's nothing wrong . . . with that. . . . I'll have to go back and check the records whether those [Bankruptcy Rule 2019] disclosure were made . . . .

What's in front of me right now is an allegation that the Court's Protective Order has been violated, and it's a serious violation and it won't be tolerated. And so I don't know what to do about that. I leave it to you. I'm happy to hear that [a third party] is [starting to cooperate]. . . . I'm glad that they are

cooperating and we'll see what unfolds. But my main concern remains, as I said last time, how are we going to move forward with this. . . . [H]ow are we going to move forward with our productions, how are we going to have a free exchange of information and a meaningful exchange that we can take into the mediation and start to solve these very, very serious problems and . . . resolve these claims. If there is a resolution. You know, I don't know.

So you know I'm open, Mr. Kuebel [Committee counsel] to suggestions. But as I said last time, my first inclination is that . . . when you've got a system that . . . already has the potential for conflicts set up and then you have something like this happen, it's hard not to just say . . . the estate's paying Committee counsel to resolve these claims and advocate for unsecured creditors, why not just limit [discovery to attorneys' eyes-only]. . . . what options do I have?

*Id*. at 17–23. Counsel for the Debtor pushed back on the Court's inclination to limit discovery to

attorneys' eyes-only:

I do think some other productions that come in while we're investigating some of this may have to be—as much as I don't think it solves the entire problem. I really don't. And that's what was my pushback last time on this because you suggested it and we had this idea of certain eyes only. And . . . my concern with that is it doesn't—I don't want that to be the solution to all of it because we have an [protective] order.

And we still have to work with  . . . those who did nothing wrong and that need to do something. And so I need them to vote for a plan. I need them to go through this, but we also need to know who the bad actor is in order to remedy the problem for the exact same reasons we're going through the exact discovery dispute. . . . We have to know what happened in order to know what the appropriate remedy entirely is.

[Attorneys' eyes-only] is a temporary remedy. And I have no problem and I think we probably will suggest on some of the documents that . . if we need to produce additional stuff, if we need to put certain things in, we may say that at this point in order to  . . . get the information where it needs to get to so we can complete the process but at the same time feel secure that it's okay.

But we recognize that that is a temporary measure and a temporary fix to a bigger problem.

*Id*. at 23–25.

The Court responded:  "Right.  Yeah, I guess I was sort of jumping to the worst-case scenario that we just don't get full disclosure and we just don't find out." *Id*. at 25. Counsel for

15

both the Debtor and the Committee expressed continued optimism in the process. *See id*. at 25–27. Recognizing the motion as a dispute between the Debtor and Committee, the Court agreed to trust the process and to be guided by the parties as to next steps as they continued to investigate the breach through informal discovery. *See id*. at 25, 39 & 49; *see also* [No. 20-10846, ECF Doc. 1290]. The Court summed up its view of the situation thus: "[M]y main concern is how do you move forward from this. Resolution, no resolution, how do you just move forward? Because . . . the mediation is happening and productions have to happen. . . . So I'm really curious and open about perhaps amendments or tweaks to the Protective Order that will help us get through this period." [No. 20-10846, ECF Doc. 1843-1, at 52].

Both of the allegedly offending statements by the Court occurred in the course of judicial proceedings and thus are presumed not to require recusal. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). Read in context, the phrase "[t]here's something else going on" as used by the Court at the February 11, 2022 transcribed conference was a paraphrase of the message implied by the February 9 e-mail sent by Mr. Gisleson. The concern "from the start of the case" stated by the Court reflects the potential conflicts inherent to the Committee process in every chapter 11 case where attorneys may represent individual Committee members regarding their individual claims against the estate as well as assist them in fulfilling their duties as members of the Committee—and simultaneously may also represent non-Committee members individual claims against the bankruptcy case. The Court and attorneys must be cognizant of that tension in every chapter 11 case. Neither of those statements were directed at the Trahants. They do not show reliance on an extrajudicial source and objectively do not display a deep-seated antagonism against the Trahants that would make fair judgment in the Adversary Proceeding impossible.

16

     b.   Statement Group Two: "[L]ooking at this particular dynamic here, my concern is that . . . I understand that there are, what, three attorneys that are longtime friends, maybe partners, maybe they're not in the same firm. But they definitely have represented a significant chunk of the abuse claimants and have litigated down in the CDC. And they've litigated together, correct? And they went to—perhaps they went to high school together, perhaps they've been long-term friends for a long time." Recusal Motion, Mem. at 8–9.

     "[Y]ou can't get leverage on the Archdiocese by calling up the Advocate." Recusal Motion, Mem. at 9.

In April 2022, the Court held its fourth transcribed conference with the Debtor, the Committee, and the UST to get an update on the progress made by the Debtor and the Committee to investigate the source of the leak of confidential documents produced by the Debtor to the Committee in discovery. [No. 20-10846, ECF Doc. 1843-3]. Judge Zive, the mediator, had been working with the parties since September 2021; the first in-person mediation had now been scheduled for early June 2022.

At three months into their informal investigation of the leak, the parties were just beginning to obtain responses to their limited third-party discovery. Counsel for the Debtor reported for the first time to the group that, although no documents had been produced by the third party, that party had disclosed that "Ricky Trahant" had contacted the third party on December 31, 2021, and had a follow-up telephone call on January 4, 2022. *Id*. at 3–4. That news was concerning to all involved: counsel for the Debtor and the Committee were frustrated by the amount of attorney time and estate resources it took to reveal what could have and should have been voluntarily disclosed sooner. *See id*. at 8–32. All parties, including the UST, were concerned with the scope of any breach committed by Trahant and whether other sources of the leak existed. *See id*. at 8–33. As observed and reported by counsel for the UST:

I'll start by saying we have not seen the [third-party] discovery responses. They haven't been provided to us. But I did talk with Mr. Mintz [Debtor's counsel]

> right after they received them, and he . . . had explained what the responses said in summary. And our understanding was . . the contacts were made by Mr. Trahant.
>
> And just to follow up on a point, he and Mr. Gisleson and Mr. Denenea have four—represent four of the six Committee members as it stands right now. So we were informed that it was Mr. Trahant, and I reported that information immediately.
>
> So where we're at is—and this was before I saw the affidavits—or declarations, I'm sorry, that were filed or provided yesterday. I was just able to go through them this morning. Haven't had a chance to even discuss them yet. I know your Honor hasn't seen them either.
>
> But where we were prior to that, prior to the provision of the declarations, was we have an allegation made against an attorney. It's not—we don't know if the [Committee] member knew or blessed this action or knew anything about it. We just don't know.

*See id*. at 32–33. The Court noted its primary concern: That a violation of the Protective Order equaled "a disruption or an interference with the business of the Committee [and] [t]he functioning of the Committee." *See id*. at 35–36. Counsel for the parties acknowledged that the usefulness of their informal discovery process had been exhausted and proposed that the UST conduct an independent investigation into the scope and sources of the breach of the Protective Order. *See id*. at 12–50. Counsel for both parties expressed confidence in the UST's ability to conduct the investigation. *See id*. As conveyed by Committee counsel:

> And your Honor, I do think now that we've gotten the [third party] responses and we're heading down this path [of the UST performing an investigation] that you will accomplish that goal [of avoiding unwieldy, antagonistic litigation between the Committee and the Debtor]. And I think that a number of the other Committee members and their counsel . . . may be less concerned. . . .
>
> So I do think that this process will take some of that pressure off, and I think there will be less of a short-term concern that all of the Committee members are going to have to be submitted to another deposition. It's a lot easier for them to have an interview with the UST as the case may be. But I do think that some of that rhetoric would be dialed down.

*See id*. at 49–50. The Debtor's counsel agreed:

Procedurally where I think this can go, Your Honor, is once your Honor is able to issue what—again, how that order looks, I don't know for sure. . . . But then we can also withdraw our motion to at least keep things clear and then we can proceed under one—under that area.

And I think, therefore, it would help as we go forward and, as [Committee counsel] has said, to dial down the rhetoric such that we can go into this mediation in the beginning of June. An, you know, we've already been told we're not going to get like—no one is under an illusion that . . . we're going to walk out on June 8th with a deal. I don't think that's going to happen, but at least we're starting the process and trying to rebuild what we can.

*Id*. at 51.

But in light of the uncertainties about the extent and possible sources of the breach of the Protective Order, the parties and the Court continued to be concerned about how to move forward in the interim. Since the leak had first been reported, the Court had limited ongoing production of discovery to "attorneys-eyes only," that is, only Committee counsel, Pachulski and Locke Lord, could view documents produced by the Debtor pending the parties' progress in their informal investigation. As explained by Debtor's counsel:

Now, I will say the one issue that I have with this process is—and the one thing I have also sort of talked about is we do need to work through now the Protective Order and what's going to happen, who can . . . have access, who can't. And . . . I don't know the best way to do it. I can tell you this, there's been additional information that's come up that the Debtor believes . . . is extremely sensitive. We're trying to discuss exactly . . . who can see it and how that works.

And what I'm trying to figure out is how now to create a Protective Order or an amendment to a Protective Order. Because I said at the beginning, I don't like the collective punishment thing either. I don't think it's effective. I don't think it is efficient to have Locke Lord and Pachulski be the only ones who can see a lot of this.

It's not going to get me to the deal that I want to get to, I know that. But we have to protect it. So I'm looking for guidance as to do we name the following people who aren't targets of an order to show cause can get it? Like I don't know how you do this. And so that's where we're going to have to work together over the next few days or weeks to get that together. Because it's also part of a rebuilding of trust concept to get it to where we need it to get to.

*Id.* at 51–53. The Court brainstormed with the parties' counsel about how to move forward, asking questions to understand the potential dynamics in order to craft a solution pending a full investigation by the UST of the allegations of breach of the Protective Order:

> [C]ollective punishments, are they fair? Absolutely not. But the risk [of further breaches of the Protective Order] was too great, and I wasn't willing to take that risk. . . .
>
> **[L]ooking at this particular dynamic here, my concern is that . . . I understand that there are, what, three attorneys that are longtime friends, maybe partners, maybe they're not in the same law firm. But they definitely have represented a significant chunk of the abuse claimants and have litigated down in the [Orleans Parish Civil District Court]. And they've litigated together, correct? And . . . perhaps they went to high school together, perhaps they've been long-term friends for a long time.**
>
> Do you have any concern with, yes, we've had one that picked up the phone. But so what if that one is not let under the tent immediately [to view protected documents] until we can make some determinations about if there were really . . . a violation of the Protective Order? But they've got . . . long-term relationships with some of these other folks. Does it do us any good just to cut one of them out and not the other?

*Id.* at 53–55. Each party and the UST acknowledged the dilemma. *See id.* at 55–58; *see also id.* at 56–57 ("And, your Honor, can I follow up on that point because we have a transcript so I want to clarify something I said earlier which I said Mr. Trahant represented four Committee members. That was me conflating the Trahant, Gisleson, and Denenea because they do work together quite a bit and are on a lot of the same E-mails. When we appointed the Committee, Mr. Trahant was designated as attorney specifically for two of the members, not four. So I just wanted to make that clear. Because you're right they are in different firms; but they . . . just seemed to work together quite a bit." (statements by the UST)). Counsel for the Committee commented on the dynamics and added a further aspect to the complexity of the problems facing the parties going forward in the midst of a breach of the Protective Order:

> COUNSEL: I don't know their exact relationship and history. I don't practice in that space. I don't actually think they all went to high school together

20

because I know one of them went to De La Salle, one of them went to Jesuit, and I'm not sure where the third one went. And I don't think they're all in the same age group.

But I understand the issues, although I will also say—and [Debtor's counsel] knows this and we've spoken candidly about it—they have a very large number of claimants in this case. And there are other [abuse claimants' attorneys] that . . . they are all working—they're all talking, they've worked on cases in the past. . . . I think there is effectively a network.

And at the end of the day to get a plan confirmed and across the line . . . we're going to need these votes, just to be blunt. And I've had that discussion with [Debtor's counsel]. And . . . we've got to try to get ourselves—hopefully mediation actually having a date will be a good place to start. But we're going to need that bloc, and it's maybe more than just those three lawyers.

But even those three lawyers in and of themselves may have a blocking position with their clients and the plan depending on how the claims get valued. I don't know. But it's a big universe, and we need to try to get to the other side of this if we're going to get to a consent plan.

COURT: Right. Well, what you can't do, though, is violate Protective orders and use information for your own. Because that destroys—**you can't get leverage on the Archdiocese by calling up The Advocate**. That's just not okay. So I understand counting votes, believe me.

COUNSEL: No argument. And I don't know that that's what's happened here. I don't. That's got to be further developed. But I'd like to think it didn't happen.

COURT: [T]he most honorable—if you're speculating as to why people do the things they do . . . the most perhaps understandable, honorable . . . spin you want to put on it, there's a legitimate concern with . . . protecting children. . . . And I get it. A more cynical person might say this is a great way to get leverage when you're about to go into a mediation by making the opponent . . . suffer in the court of public opinion. . . .

COUNSEL: Your Honor, it's something that we've been sensitive to. There have been a number of press stories throughout this case. A lot of them. This is the first one that implicates documents in something that we've worked on . . . .

*Id.* at 57–60. The Court then asked the UST to provide information on how quickly that office could start and complete its investigation of the Protective Order breach allegations, explaining that "it is important because we need to integrate people back under the tent so they can do their

21

jobs," that is, all individual Committee members and their counsel needed to be able to see protected documents produced by the Debtor again so that the case could continue to move forward. *See id*. at 63.

The allegedly offending statements by the Court in Statement Group Two occurred in the course of judicial proceedings and thus are presumed not to require recusal. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). Read in context, the questions asked by the Court regarding the relationships among counsel to individual Committee members were relevant to assessing ongoing restrictions to confidential information pending the outcome of the UST's fulsome investigation. The Court and the parties attempted to balance the need of Committee members and their counsel to have full access to protected information produced by the Debtor to endeavor to move the case forward with the Court's responsibility to protect the process from further abuse. The questions posed by the Court do not show reliance on an extrajudicial source and objectively do not display a deep-seated antagonism against the Trahants that would make fair judgment in the Adversary Proceeding impossible. Indeed, the questions posed by the Court indicate the opposite: that the Court had no extrajudicial information, but was trying to work with the parties to protect the fairness of the process.

> c. Statement Group Three: "It makes me nervous, but we have to, you know, there are a few, a few bad actors, but, on the whole, the committee members have signed the protective order." Recusal Motion, Mem. at 9.

On June 16, 2022, the Court held a status conference in open court. By that time, the UST had completed its formal investigation into the allegations regarding the breach of the Court's Protective Order (the "UST Report"). The Court had accepted those findings and issued its Order of June 7, 2022, finding that Trahant had knowingly and willfully violated this Court's

Protective Order.[5]  In addition to prohibiting Trahant from receiving further access to protected information in the Debtor's bankruptcy case, the Court instructed the UST to remove four individual Committee members that the UST had found were represented jointly by Trahant and two other attorneys, stating:

> Trahant's willful breach of this Court's Protective Order clearly disqualifies him from further receiving Protected Material in this case and participating in any confidential Committee proceedings, including meetings, deliberations, and mediation.  To be sure, Trahant has never served as a member of the Committee; yet, as personal counsel to individual Committee members, Trahant and his team of co-counsel received confidential information from the Debtor.  The Court acknowledges that individual Committee members may retain the attorney of their choosing to represent their personal interests in this chapter 11 case and have chosen Trahant and his group.  This Court certainly has no intention of invading the attorney-client privilege to modulate the communications between those Committee members and their attorneys; indeed, any attempt to regulate or stop the flow of information or candor that must exist between a client and her attorney is not only a futile endeavor, but would offend a fundamental facet of effective legal representation.  Thus, an impasse has been reached.

> This Court must nevertheless act to protect against disruption of the bankruptcy process, to guard the rights of all parties in interest, and, most immediately in light of the current posture of this case, to preserve the trust in the confidentiality of mediation.  Given Trahant's willful breach and disregard of this Court's Protective Order and the dynamics present on the Committee, the Court is forced to impute Trahant's actions to those of his clients on the Committee and finds cause for their removal from the Committee.

---

[5]    The Court fully acknowledged that the leak of confidential, protected information may not have emanated solely from Trahant:

> No dispute exists that the information that reached the media was information that could not have come from any other source but the Debtor's production of discovery in this case.  Although the Court commends the UST's diligence and expeditiousness in investigating the disclosure of highly confidential information in violation of the Protective Order, as the UST Report acknowledges, serious questions remain regarding the extent of the information that was provided to third parties and the media by Trahant and whether documents or sensitive information contained therein was also provided to the media by someone else.  The fact that no one may ever be able to uncover the extent of the breach, however, does not affect this Court's duty to protect the integrity of the bankruptcy process and enforce its own Orders.

[No. 20-10846, ECF Doc. 1574, at 3–4].

[No. 20-10846, ECF Doc. 1574, at 4–5].

At the June 16 status conference, the Court lifted the "attorneys-eyes only" restriction for

viewing protected information produced by the Debtor to the Committee:

> When the Archdiocese filed the motion to compel and asked for an evidentiary hearing alleging serious allegations of violation of the protective order, the Court allowed some discovery to take place between the parties. During the course of that and until we could resolve that particular issue, I limited the discovery that was being exchanged to attorneys' eyes only for the Committee and I just wanted to make clear that . . . that limitation is now lifted.

> So the members of the Committee as it is constituted now and in the event that the United States Trustee elects in her discretion to appoint new members of the Committee, all of those committee members will be able to see all discovery that's coming out of the Committee, again subject to the protective order that's in place that continue to govern discovery in this matter.

[No. 20-10846, ECF Doc. 1602, at 7]. Counsel for the Committee asked if the Court's lifting of

the "attorneys-eyes only" limitation also included the UST's Report, such that remaining

individual Committee members and their counsel could review the report. *See id.* at 10. The

Court responded:

> Yes. . . . [T]he report itself is under seal pursuant to Section 107(b)(2) of the Bankruptcy Code, but we know that if committee members and their counsel have signed the protective order, that they can see those. . . .

> . . . Section 107 of the Bankruptcy Code allows documents to be sealed to "protect a person with respect to scandalous or defamatory matter contained in a paper in a case filed under this title." It's an understatement to say that there is scandalous and defamatory information in that report, not to mention the fact that . . . folks were deposed at the time knowing they were being deposed in a matter that was under seal and that was specifically to . . . make sure that we had . . . candor with the UST about . . . any knowledge that those deponents had. **It makes me nervous, but we have to, you know, there are a few . . . bad actors, but, on the whole, the committee members have signed the protective order.** According to the UST's report, most, the majority, the overwhelming majority complied and continue to comply with that protective order.

> So that, we . . . would trust that they would honor their word, honor their signature, and honor their duty to the Court and just keep it under seal.

*See id.* at 10, 12–13. The status conference continued with a discussion regarding service of the Court's Order of June 7, 2022. *See id.* at 13–24.

The Court's reference to "a few bad actors" was made on the record in the course of the Debtor's bankruptcy case **after** the UST had completed a thorough investigation of the leak of protected information obtained through the discovery process in the Debtor's bankruptcy case and **after** the Court had reviewed and accepted the UST's findings and issued an Order finding that Trahant had knowingly and willfully violated this Court's Protective Order. "[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Liteky v. United States*, 510 U.S. 540, 551 (1994). And "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555–56. Indeed, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Id.* "Adverse judicial rulings are not themselves indications of bias, but are the necessary product of the adversarial process and a judge's role as umpire." *Sanders v. Christwood, L.L.C.*, No. 17-9733, 2020 WL 741995, at *5 (E.D. La. Dec. 18, 2020). As explained by the Supreme Court:

> Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.

*Liteky*, 510 U.S. at 551 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). Against those standards, one reference to Trahant—an individual who has been found to have knowingly and willfully violated the Protective Order—and other possible unknown individuals who may have also breached the Protective Order as "bad actors" does not support recusal as it

does not display a deep-seated and unequivocal antagonism that would render fair judgment impossible.[6]

In sum, all of the intrajudicial statements proffered by the Trahants as alleged evidence of this Court's personal bias or prejudice pertain directly to this Court's Orders of June 7, 2022, and October 11, 2022, finding that Trahant knowingly and willfully violated this Court's Protective Order and imposing sanctions for that violation. But

> it is not the purpose of [§§] 144 or 455 to enable the unscrupulous or reckless lawyer to engage in conduct in a course of litigation that might cause any conscientious judge to express, even in caustic terms, his disapproval of it, and thereby put himself in position thereafter to urge successfully motions to disqualify the judge in his subsequent cases before him.

*United States v. Zagari*, 419 F. Supp. 494, 505 (N.D. Cal. 1976) (interpreting the Fifth Circuit's holding in *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 517 F.2d 1044 (5th Cir. 1975)). Indeed, "[s]ection 455 'is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.'" *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 297 (Bankr. M.D. Fla. 2007) (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).[7]

---

[6]      The Trahants also reference an Order To Show Cause issued by this Court on June 13, 2022, that included a typographical error in the header of the document. *See* Recusal Motion, Mem. at 10. The Trahants assert that the "YES!" phrase mistakenly embedded in the header of the Order indicates this Court's bias toward them. *See id.* The issue was quickly corrected with the replacement of the Order on the docket. The error is likely more reflective of the mistakes that can be made when an attorney or law clerk is drafting multiple documents, e-mails, and Teams messages across numerous open "windows" on computer screens rather than evidence supporting the illogical conclusion that the Court was "gleeful . . . at the prospect of Mr. Trahant being sanctioned" and purposefully embedded a remark in the header of its own Order.

[7]      The Trahants point to the decision made by Judge Papillion of the United States District Court for the Eastern District of Louisiana to recuse himself from hearing cases involving the Archdiocese and opine that "Judge Papillion had far fewer reasons than this Court to recuse himself" as a reason that this Court should also make the decision to recuse. [ECF Doc. 39, at 4.] But Judge Milazzo, another district judge of the Eastern District of Louisiana, recently addressed similar arguments made by Trahant and co-counsel on behalf of an abuse claimant in a § 455 motion filed before her:

> Plaintiff makes much ado about the prior recusals of other judges in this district from cases involving the Archdiocese, as if to suggest that there is some conspiracy of Catholic judges afoot in the Eastern District of Louisiana aimed at hindering the rights of

Thus, although it is understandable that the Trahants disagree with this Court's conclusions detailed in its June 7 and October 11 Orders, the appropriate remedy is the appeal process, not a recusal motion. *See, e.g.*, *id*. at 296–97.

> 3. *Participation on educational panels and teaching law school classes with counsel that appear before this Court are not bases for recusal.*

The Trahants also assert that this Court is biased in favor of Jones Walker and Mark Mintz, both Defendants in the Adversary Proceeding, by virtue of her "partnering with Jones Walker or the Apostolates' attorneys for CLE and having taught a class with Mr. Mintz." Recusal Motion, Mem. at 12.

It is true that the Court has served on numerous continuing-legal-education panels with many attorneys who practice regularly in the Bankruptcy Court for the Eastern District of Louisiana. Those speaking engagements are well-publicized by the law schools and bar associations sponsoring the events to attract attendance. "The cases make clear that participation on an educational panel with counsel is not a basis for recusal, for sound policy reasons." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 160 (S.D.N.Y. 2012) (citing cases). As explained by one court:

> It is common knowledge, of course, that judges regularly appear on panels and at presentations for members of the bar, and that such events are regularly advertised in various publications that might be viewed by both the public and the bar. But it is not reasonable to conclude that the participation of a judge with members of the bar who appear before the judge's court would create a predisposition, or an

---

sexual abuse victims. The undersigned can assure Plaintiff that there is not. Further, the connections of those judges to the Archdiocese are vastly different from the connections at issue here, and they therefore have no bearing or even persuasive value.

*Doe v. Roman Catholic Church of the Archdiocese of New Orleans*, No. 20-1321, slip op. at 7–8 (E.D. La. July 7, 2023). Judge Papillion did not identify his bases for deciding to recuse himself from hearing matters involving the Archdiocese, but that decision is individual to him just as this Court's decision is individual to her. *See supra* Subpart B.1. Thus, it has no bearing on this Court's consideration of the Recusal Motion here.

> appearance of a predisposition, to favor the members of the bar who participate
> over those who do not. The Debtor's assertion of an appearance of impropriety is
> undermined by Canon 4 of the Code of Conduct, which not only permits judges to
> participate in such activities, but encourages judges to do so.

*In re Healy*, No. 04-28375, 2006 WL 3751617, at *4 (Bankr. E.D. Cal. Dec. 18, 2006).[8] Indeed,

"[t]o permit such associations to become grounds for recusal would either push judges towards a

hermit-like existence or open the floodgates to recusal motions." *Leja v. Schmidt Mfg., Inc.*, No.

01-5042, 2010 WL 2571850, at *2 (D.N.J. June 22, 2010); *see also Moran v. Clarke*, 213 F.

Supp. 2d 1067, 1073 (E.D. Mo. 2002); *In re Wolverine Proctor & Schwartz, LLC*, 397 B.R. 179,

183 (Bankr. D. Mass. 2008).

 The Court has also taught a class with Mr. Mintz at Tulane University School of Law, a

fact that has been available on Tulane's website and was disclosed at the early days of the

Archdiocese's bankruptcy case on May 15, 2020, in connection with Jones Walker's

employment application. [No. 20-10846, ECF Doc. 75-4]. Trahant received electronic notice of

that disclosure on May 16, 2020, and also received notice by mail on May 18, 2020, because he

had filed a *Notice of Appearance and Request for Notice* in the bankruptcy case on May 4, 2020.

[No. 20-10846, ECF Docs. 37 & 96]. No objections were filed to Jones Walker's employment

application and the Court granted that application on June 19, 2020. [No. 20-10846, ECF Doc.

170]. "A motion to disqualify must be filed timely, which is 'as soon as practicable after

---

[8] Canon 4(A)(1) of the Code of Conduct for United States Judges provides that "[a] judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice." The comment to Canon 4 explains:

> Complete separation of a judge from extrajudicial activities is neither possible nor wise; a
> judge should not become isolated from the society in which the judge lives. As a judicial
> officer and person specially learned in the law, a judge is in a unique position to
> contribute to the law, the legal system, and the administration of justice . . . . To the
> extent that the judge's time permits and impartiality is not compromised, the judge is
> encouraged to do so, either independently or through a bar association, judicial
> conference, or other organization dedicated to the law.

Code of Conduct for United States Judges Canon 4 cmt.

discovery of the allegedly disqualifying facts." *Carpenter v. BP Expl. & Prod. Inc.*, No. 17-3645, 2022 WL 2800014, at *4 (E.D. La. July 14, 2022) (quoting *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110, 1114 (E.D. La. 1986)). "The timeliness requirement preserves the [§ 455's] integrity by discouraging bad faith manipulation of the federal judiciary's ethical obligations for litigious advantage." *Id.* (citing *Deledernier v. Porterie*, 666 F.2d 116, 121 (5th Cir. 1982)). Considering the totality of the circumstances here and given the timing of disclosure of this Court's co-teaching of a law school class with Mr. Mintz, the Court finds that the Trahants' motion to disqualify this Court on that basis was not filed timely.

Thus, this Court rejects the Trahants' assertion that the Court's extrajudicial educational activities in the community establishes reasonable grounds for doubting this Court's impartiality.

    *4. The subjective declarations attached to the Recusal Motion are not relevant or appropriate for the Court to consider in deciding whether to recuse.*

The Trahants have procured over forty identical form declarations from various individuals, each of which (i) refers to the $400,000 sanction imposed by this Court against Trahant, (ii) states that the individual believes that the Archdiocese's bankruptcy case "is about pedophile clergy and an organization that has protected them," and (iii) concludes that this Court cannot be fair and impartial in hearing the Adversary Proceeding. *See* Recusal Motion, Ex. 2. Mrs. Trahant, a plaintiff in the Adversary Proceeding, also submitted a similar declaration. *See id.* The Trahants assert that the declarations, "standing on their own, should satisfy the requirement of recusal under both 28 U.S.C. 455(a) and (b)(1)." Recusal Motion, Mem. at 14.

    But a judge's decision to recuse is not subject to popular vote. Rather,

[d]isqualification under section 455(a) must rest upon a factual basis. The test under that provision is not the subjective belief of the defendant or that of the judge, but whether facts have been presented that, assuming their truth would lead

29

a reasonable person reasonably to infer that bias or prejudice existed, thereby foreclosing impartiality of judgment. The claim must be supported by facts which would raise a reasonable inference of lack of impartiality on the part of the judge in the context of the issues presented for his consideration.

*United States v. Corr*, 434 F. Supp. 408, 412–13 (S.D.N.Y. 1977) (citations omitted). The question presented by the Recusal Motion is whether 28 U.S.C. § 455 requires this Court to disqualify itself from hearing the Adversary Proceeding. That decision is "solely a question of law." *Melendres v. Arpaio*, No. 07-2513, 2015 WL 13173306, at *9 (D. Ariz. July 10, 2015) (citing *Jefferson Cnty. v. Acker*, 92 F.3d 1561, 1581 (11th Cir. 1996), *vacated on other grounds*, 520 U.S. 1261 (1997); *In re City of Houston*, 745 F.2d 925, 927 (5th Cir. 1984)). Absent from the declarations are any factual bases in the record for recusal; instead, the declarations contain only the declarants' "distinct impression[s]," beliefs, and opinions as to whether this Court must withdraw from hearing the Adversary Proceeding. Recusal Motion, Ex. 2. As such, those declarations are not appropriate for the Court to consider in deciding the legal issue of recusal. *See Melendres*, 2015 WL 13173306, at *9 (citing *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 66 (S.D.N.Y. 2001) and *United States v. Eyerman*, 660 F.Supp. 775, 781 (S.D.N.Y. 1987) to find that consideration of third-parties' opinions is not appropriate when deciding whether to recuse).

## CONCLUSION

Having fully considered the parties' arguments and the applicable law, the Court finds that a reasonable person, being fully advised on the facts, would not harbor doubts regarding this Court's impartiality to hear and decide the Adversary Proceeding. Accordingly,

**IT IS ORDERED** that the § 144 Affidavit and the Recusal Motion are **DENIED**.

New Orleans, Louisiana, this 13th day of November 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-10846 |
| | § | |
| THE ROMAN CATHOLIC CHURCH OF | § | CHAPTER 11 |
| THE ARCHDIOCESE OF NEW | § | |
| ORLEANS, | § | SECTION A |
| | § | |
| DEBTOR. | § | COMPLEX CASE |
| | § | |

| | | |
|---|---|---|
| | § | |
| RICHARD TRAHANT AND | § | |
| AMY O. TRAHANT, | § | |
| | § | |
| PLAINTIFFS, | § | ADVERSARY NO. 23-1018 |
| | § | |
| V. | § | |
| | § | |
| MARK A. MINTZ, JONES WALKER LLP, | § | |
| AND DONLIN RECANO & COMPANY, | § | |
| INC., | § | |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a *Motion To Remand* filed on behalf of Richard Trahant and Amy O. Trahant (the "Trahants"), the Plaintiffs in the above-captioned adversary proceeding. [ECF Doc. 2]. Mark A. Mintz, Jones Walker LLP, and Donlin Recano & Company, Inc. (the "Defendants") oppose the motion, [ECF Doc. 21], and the Trahants filed a reply brief in support of their motion, [ECF Doc. 40]. For the following reasons, the Court DENIES the Motion To Remand.

## PROCEDURAL POSTURE

On May 1, 2020, The Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese" or, post-petition, the "Debtor") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code in this Court. [No. 20-10846, ECF Doc. 1]. Prior to filing, the Archdiocese had been defending against at least 34 pending lawsuits filed in Louisiana state

court between 2018 and 2020 by individuals alleging claims of sexual abuse by priests or lay persons employed or supervised by the Archdiocese and complicity of the Archdiocese in that abuse (the "Abuse Cases").  Richard Trahant represented plaintiffs in some of the Abuse Cases. When the Archdiocese filed its petition for bankruptcy relief, all of the Abuse Cases were stayed pursuant to 11 U.S.C. § 362(a), but several of the plaintiffs and their counsel in the Abuse Cases, including Trahant, mobilized quickly and have participated from the very start of the Debtor's bankruptcy case.

The Office of the United States Trustee ("UST") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to 11 U.S.C. § 1102(a)(1) on May 20, 2020, and reconstituted the membership of the Committee a number of times to deal with the contours of the case.  [No. 20-10846, ECF Docs. 94, 151, 478, 1575, 1618 & 2081].  Early in the case, the Court approved the Committee's retention of the law firms of Locke Lord LLP and Pachulski Stang Ziehl & Jones LLP as counsel for the Committee.  [No. 20-10846, ECF Docs. 256 & 257]. Individual members of the Committee retained their own counsel to advise them regarding their individual claims against the estate and to assist them in fulfilling their duties as members of the Committee.  For two years, Richard Trahant served as counsel to several individual members of the Committee.

In January 2022, the Debtor notified the Court of its belief that individual(s) had breached this Court's Protective Order governing discovery exchanged between the Debtor and the Committee in the Debtor's bankruptcy case.  The Debtor requested discovery from the Committee and an evidentiary hearing to determine the root of the breach.  After months of informal discovery between the parties followed by an official independent investigation by the UST involving numerous depositions and robust discovery, the Court memorialized and detailed

2

its conclusions in a *Memorandum Opinion and Order* dated June 7, 2022. In that Order, the Court found, among other things, that Trahant had knowingly and willfully violated the Protective Order by disclosing confidential, protected information obtained through discovery in the bankruptcy case to third parties including the media. The Court's June 7, 2022 Order also instructed the UST to remove the individual Committee members represented by Trahant from the Committee. A week later, the Court issued a separate *Order To Show Cause* to determine appropriate sanctions for Trahant's disclosure of confidential information in violation of the Court's Protective Order. Months later, the Court held the show-cause hearing. After considering attorney argument and sworn testimony provided by Trahant at that hearing, the Court issued a *Memorandum Opinion and Order* dated October 11, 2022, detailing the factual and legal bases for imposing sanctions against Trahant in the amount of $400,000 for willfully violating this Court's Protective Order. That amount represented a fraction of the billable time spent by counsel for the Debtor and the Committee in investigating the source of the leak for months and participating in the formal, independent investigation conducted by the UST. [No. 20-10846, ECF Docs. 1574, 1589 & 1844].[1]

On June 2, 2023, the Trahants filed a *Petition for Damages* in Louisiana state court against the Defendants, asserting claims for abuse of process, intentional and negligent infliction

---

[1] Trahant and individual former members of the Committee appealed those Orders to the United States District Court for the Eastern District of Louisiana. *See In re The Roman Catholic Church of the Archdiocese of New Orleans*, No. 22-1738 (E.D. La. Aug. 11, 2022) (ECF Doc. 38 (dismissing former Committee members' appeal for lack of standing)) & (E.D. La. June 21, 2023) (ECF Doc. 74 (declining Committee members' request to vacate ECF Doc. 38)); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. Mar. 27, 2023) (ECF Doc. 88 (affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022); *In re Roman Catholic Church of the Archdiocese of New Orleans*, Nos. 22-1740 c/w 22-4101 (E.D. La. June 21, 2023) (ECF Doc. 107 (denying Trahant's motions for rehearing and to vacate ECF Doc. 88 and corresponding judgments, but substituting Order and Reasons affirming the Bankruptcy Court's Orders of June 7, 2022 and October 11, 2022). The matters are now pending on appeal with the United States Court of Appeals for the Fifth Circuit. *See Trahant v. Official Comm. of Unsecured Creditors*, No. 23-30466 (filed July 21, 2023) (consolidated with No. 22-30539).

of emotional distress, and loss of consortium, all in connection with the Defendants' alleged improper service of this Court's June 7, 2022 Order (the "State Court Action"). [ECF Doc. 7]. The Defendants timely removed the State Court Action to the United States District Court for the Eastern District of Louisiana under 28 U.S.C. §§ 1441, 1446, and 1452, and the case was assigned to Judge Ashe. [E.D. La. No. 23-2053, ECF Doc. 1]. The Trahants filed the Motion To Remand in the District Court and asked that the State Court Action be remanded. [E.D. La. No. 23-2053, ECF Doc. 9].

The Defendants requested Judge Ashe to refer the State Court Action to this Court pursuant to the District Court's local rules and its General Order of Reference, asserting that the Trahants' lawsuit was not only "related to" the Debtor's bankruptcy case pursuant to 28 U.S.C. § 1334(b), but that the lawsuit implicates the long-standing *Barton* doctrine, a common-law principle that bars suits against court-appointed trustees and other fiduciaries absent court permission. [E.D. La. No. 23-2053, ECF Doc. 11 (citing *Barton v. Barbour*, 104 U.S. 126, 128 (1881)]. On July 14, 2023, Judge Ashe referred the State Court Action to this Court for all purposes, finding that

> the most efficient course of action for the administration of justice, in general, and this case, in particular, is to refer to the case to the bankruptcy judge for determination in the first instance of the issues raised by the motion to remand. At bottom, the case was removed on grounds of bankruptcy jurisdiction because the plaintiffs' claims revolve around the interpretation, implementation, and enforcement of an order of the bankruptcy court. It appears to this Court, then, that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding [under 28 U.S.C. § 157(b)(2)] . . . or, at least, a proceeding related to a title 11 case. However, the determination of these threshold issues, as raised by the motion to remand, are left to the bankruptcy judge, who is well-equipped to address such matters (notwithstanding this Court's preliminary observations) given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine, which vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy court concerning acts done in their official capacity.

4

[E.D. La. No. 23-2053, ECF Doc. 12 (internal quotations and citation omitted)]. Upon referral to this Court, the Trahants' State Court Action was docketed as the Adversary Proceeding. On August 15, 2023, Judge Ashe denied the Trahants' motion to reconsider his decision and withdraw his referral of the State Court Action to this Court, writing:

> [T]he Court again concludes that reference to the bankruptcy court for the determination of certain pretrial issues (including subject-matter jurisdiction) in the first instance is appropriate where plaintiffs' claims and their pending motion to remand implicate the bankruptcy court's gatekeeping function under the *Barton* doctrine. . . . And relatedly, under its gatekeeping function, the bankruptcy court is empowered to determine—in the first instance—whether subject-matter jurisdiction exists, and so it may properly adjudicate plaintiffs' motion to remand. Thus, plaintiffs' contention that reversal or withdrawal of the reference is proper because the action fails even to invoke "related to" jurisdiction under 28 U.S.C. § 1334(b) is inapposite.

[E.D. La. No. 23-2053, ECF Doc. 18 (internal quotations and citations omitted)].

## DISCUSSION

The Defendants removed the Trahants' State Court Action to the District Court under 28 U.S.C. §§ 1441, 1446, and 1452.[2] With some exceptions not applicable here, § 1452 allows a party to remove "any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). The Trahants seek remand of the State Court Action, asserting that "the Court lacks federal subject matter jurisdiction over the action." Motion To Remand, Mem. at 1. The Trahants also assert that mandatory abstention under 28 U.S.C. § 1334(c)(2) applies here or, alternatively, ask this Court

---

[2] "Except where expressly prohibited by Congress, 28 U.S.C. § 1441 allows a defendant to remove 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *Cristea v. ArborPro, Inc.*, No. 23-02768, 2023 WL 7297982, at *1 (E.D. La. Nov. 6, 2023) (quoting 28 U.S.C. § 1441(a)). Section 1446 governs the procedure for removal of civil actions.

to exercise its discretion to abstain from hearing the State Court Action and allow it to proceed in

state court pursuant. *See* Motion To Remand, Mem. at 7–9.

Jurisdiction is assessed based on the facts as they existed at the time of removal. *See*

*Louisiana v. Am. Nat'l Prop. & Cas. Co.*, 746 F.3d 633, 639 (5th Cir. 2014). "Because federal

courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are

construed against removal and in favor of remand." *Alexander v. Travelers Indemnity Co.*, 625

F. Supp. 3d 512, 517 (E.D. La. 2022) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276

F.3d 720, 723 (5th Cir. 2002)). "The party seeking removal has the burden of establishing that

federal subject-matter jurisdiction exists and that removal was proper." *Id.* (citing *Manguno*, 276

F.3d at 723).[3]

---

[3] "For purposes of determining whether removal was proper in the first instance . . . the party seeking removal need only show that, under the minimum requirements of 'related-to' jurisdiction, 'the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . [or] the outcome could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handline and administration of the bankruptcy estate." *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *4 (C.D. Cal. Dec. 17, 2018) (quoting *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988)); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (holding that a matter is "related to" a bankruptcy case as that phrase is used in 28 U.S.C. § 1334(b) if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy"). As explained by the Eleventh Circuit:

> The . . . test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Lawrence v. Goldberg*, 573 F.3d 1265, 1270–71 (11th Cir. 2009) (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990)).

 The Trahants' State Court Action asserts claims against the Defendants for actions taken in the course of their official duties as estate professionals in executing an Order of this Court, the resolution of which certainly impacts the handling and administration of the Debtor's bankruptcy estate. For the reasons discussed below, *see* discussion *infra* Subpart B, the Court finds that the claims asserted in the Trahants' State Court Action are more than just "related to" the Debtor's bankruptcy case. But at a minimum, the State Court Action is indeed "related to" the Debtor's bankruptcy case. *See Lawrence*, 573 F.3d at 1271; *In re Wood*, 825 F.2d at 93. Therefore, the Court finds that the Defendants have made a

**A. As an Initial Matter, the *Barton* Doctrine Requires That the Claims Asserted in the State Court Action Either Be Brought in this Court or With Leave of this Court To File the Claims in Another Venue.**

"First articulated by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), the *Barton* doctrine provides that a party may not bring a lawsuit against a court-appointed receiver for acts done in the receiver's official capacity, unless the appointing court has affirmatively granted leave to sue." *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *4 (C.D. Cal. Dec. 17, 2018) (citations omitted). "Part of the rationale for the *Barton* doctrine is that the appointing court has in rem subject-matter jurisdiction to entertain a lawsuit against the court-appointed official overseeing property in the court's 'possession.'" *Id.* (citing *Barton*, 104 U.S. at 136–37). "The Supreme Court reasoned that allowing plaintiff's action to proceed without leave of the appointing court would have been 'an usurpation of the powers and duties which belonged exclusively to [the appointing] court." *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (quoting *Barton*, 104 U.S. at 136). Thus, "[t]he *Barton* doctrine is a practical tool to ensure that all lawsuits that could affect the administration of the bankruptcy estate proceed either in the bankruptcy court, or with the knowledge and approval of the bankruptcy court." *Hadi*, 2018 WL 6675622, at *4 (quoting *Harris v. Wittman (In re Harris)*, 590 F.3d 730, 742 (9th Cir. 2009)). Moreover, "claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the [plaintiff] alleges such acts were taken with improper motives." *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012).

---

sufficient showing that federal subject-matter jurisdiction exists and removal was proper under 28 U.S.C. § 1452(a).

The Fifth Circuit applies the *Barton* doctrine to lawsuits against court-appointed fiduciaries of the estate. *See, e.g., Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at \*5 (5th Cir. Jan. 3, 2023) ("Under [the *Barton*] doctrine, before a plaintiff can sue a bankruptcy trustee, or a court-approved professional employed by a bankruptcy trustee such as counsel for the trustee, in a forum other than the appointing court, leave of the appointing court must be obtained."); *NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 439 (5th Cir. 2022) ("Under the *Barton* doctrine, the bankruptcy court may require a party to obtain leave of the bankruptcy court before initiating an action in district court when the action is against the trustee or other bankruptcy-court-appointed officer, for acts done in the actor's official capacity." (internal quotations and citation omitted)); *Villegas v. Schmidt*, 788 F.3d 156, 159 (5th Cir. 2015) ("[A] party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee.").

A plain reading of the allegations and claims asserted in the Trahants' State Court Action against the backdrop of events that have unfolded in the Debtor's bankruptcy case reveals that all of the claims asserted in the State Court Action arise from the Defendants' roles as Debtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to serve this Court's Order of June 7, 2022.[4] The Trahants did not move this Court for leave to assert their claims against the Defendants in a forum other than this Court prior to filing their lawsuit in state court. Under the *Barton* doctrine, without leave of this

---

[4] In chapter 11, with few exceptions, a debtor in possession has all of the rights, duties, and powers as a trustee. *See* 11 U.S.C. § 1107(a); *see also* FED. R. BANKR. P. 9001(11) (defining "Trustee" to "include[] a debtor in possession in a chapter 11 case"). Further, counsel and other professionals retained by a trustee or debtor in possession with court approval are treated as functional equivalents of the trustee or debtor in possession. *See, e.g.*, *Allard v. Weitzman*, 991 F.2d 1236, 1241 (6th Cir. 1993) ("We hold, as a matter of law, counsel for the trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets.").

Court, no other court enjoys subject-matter jurisdiction over the State Court Action.  For this reason alone, the Motion To Remand must fail.  *See, e.g.*, *Hadi*, 2018 WL 6675622, at *9.

**B. The State Court Action Is a "Core Proceeding" That This Court May Hear and Determine on a Final Basis.**

Section 1334 grants district courts "original and exclusive jurisdiction" over all cases "under title 11," that is, the Bankruptcy Code.  28 U.S.C. § 1334(a).  Under that section, the district courts also enjoy "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  "The distinction between cases that 'arise under' or 'arise in' Title 11, on the one hand, and cases that are 'related to' Title 11, on the other hand, 'has significance as a jurisdictional consideration.'"  *Hadi*, 2018 WL 6675622, at *3 (quoting *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995)).

"The bankruptcy courts in turn draw their jurisdiction from the district courts under 28 U.S.C. § 157(a)."  *In re Foster*, 2023 WL 20872, at *2 (internal quotations and citation omitted).  "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates certain matters as 'core proceedings' and authorizes a bankruptcy court to determine the matters and enter final judgments."  *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 323 (5th Cir. 2016) (citation omitted).  Section 157(b)(2) provides a non-exclusive list of proceedings that are considered to be "core proceedings."  To distinguish "core" from "non-core" proceedings, the Fifth Circuit has explained:

> Congress used the phrase "arising under title 11" to describe those proceedings that involve a cause of action created or determined by a statutory provision if title 11.  Apparently, the phrase was taken from 28 U.S.C. § 1331, conferring federal jurisdiction in which it carries a similar and well-accepted meaning.  The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise only in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly

created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

As defined above, the phrases "arising under" and "arising in" are helpful indicators of the meaning of core proceedings. If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceedings; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 607 (S.D. Tex. 1999) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96–97 (5th Cir. 1987)). The Trahants argue that the claims asserted in the State Court Action are not "core proceedings" because "the Trahants and all defendants in this case are 'non-debtors,' and the Trahants only have advanced state law causes of action." Motion To Remand, Mem. at 8. Viewing the State Court Action in the context of events that have transpired in the Debtor's bankruptcy case, however, indicates otherwise.

This Court is responsible to determine "whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." *Id.*; *see also Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 931 (5th Cir. 1999) ("To begin with, the state law origin of [plaintiff's] claims is not dispositive . . . . That [plaintiff's] claims against the court-appointed accountant for its examiner arose under state law does not prevent them from involving core jurisdiction."). On its face, the State Court Action asserts claims that arise from the Defendants' roles as Debtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to

10

serve this Court's Order of June 7, 2022.  Those claims could not exist outside of the bankruptcy context and are thus considered to be "core" matters upon which this Court may enter final judgment.  As explained recently by the Fifth Circuit in a comparable case:

> Claims against a trustee and the trustee's counsel for their actions in a bankruptcy proceeding are the type of claims that could not arise outside of the context of the underlying bankruptcy case . . . .  [Plaintiff] claims that the face of her complaint only raises state law claims.  However, this argument is unpersuasive when, as is the case here, the claims could not arise outside of the bankruptcy context.  **As a result, [Plaintiff's] argument that the bankruptcy court could not enter final judgment is meritless.**

*Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872, at *2–3 (5th Cir. Jan. 3, 2023) (emphasis added) (citing *In re Southmark Corp.*, 163 F.3d at 930–31 (holding that claims alleged in a removed state court lawsuit against debtor's court-appointed accountant "involve[d] the nature of the services for the debtor's estate" and were, therefore, "core" matters)); *see also Lowenbraun v. Canary, Jr. (In re Lowebraun)*, 453 F.3d 314, 321 (6th Cir. 2006) (holding that plaintiff's removed state court lawsuit against trustee's counsel asserting claims arising from counsel's conduct during the course of the bankruptcy case to be a "core proceeding"); *Hadi*, 2018 WL 6675622, at *9 (same).  For these reasons, this Court may exercise subject-matter jurisdiction over the State Court Action and enter final judgment.

### C. Mandatory Abstention Is Not Applicable Here and This Court Declines To Exercise Permissive Abstention.

The Fifth Circuit has interpreted 28 U.S.C. § 1334(c)(2)

> to mandate federal court abstention where '(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related to a case under title 11 but does not arise under or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 300 (5th Cir. 2007).  Relying on that reading of the statute, the Fifth Circuit has concluded

11

that "[m]andatory abstention does not apply to core proceedings." *In re Foster*, 2023 WL 20872, at *3. Because the claims asserted in the State Court Action are "core proceedings," mandatory abstention is not applicable.[5]

Alternatively, the Trahants request the Court to exercise its discretion to abstain from hearing the State Court Action in favor of allowing it to proceed in state court. Section 1334 of Title 28 of the United States Code provides an avenue for such "permissive" abstention:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). "Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction conferred and adjudicate a controversy properly before it." *Foster v. Holder (In re Foster)*, Adv. No. 19-04131, 2020 WL 612915, at *18 (Bankr. N.D. Tex. Oct. 15, 2020), *aff'd*, *Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023). Indeed, "[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (citation omitted). Pursuant to the Supreme Court's instruction, permissive abstention is confined to three general categories:

> (1) cases presenting a federal constitutional issue with might be mooted or presented in a different posture by a state court determination of pertinent state law; (2) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; and (3) where, absent bad faith, harassment, or a patently invalid

---

[5] Even if the claims asserted in the State Court Action were merely "related to" the Debtor's bankruptcy case, mandatory abstention would not apply here. "With regard to abstention, non-core proceedings, though based upon State law claims, are not subject to the mandatory abstention requirements of 28 U.S.C. Section 1334(c)(2)." *McGraw v. Liberty Airlines, Inc.*, 55 B.R. 872, 876 (Bankr. N.D. Ohio 1985) (citing 28 U.S.C. § 157(b)(4)).

state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings.

*Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Reg'l Sports Network, L.P.)*, 514 B.R. 211, 217–18 (Bankr. S.D. Tex. 2014) (citing *Colorado River Water Conservation Dist.*, 424 U.S. at 814–16). Courts, however, have distinguished *Colorado River* abstention from statutory abstention under § 1334(c), finding that bankruptcy courts enjoy broad discretion on whether or not to abstain from adjudicating claims. *See, e.g.*, *Bricker v. Martin*, 348 B.R. 28, 32–33 (W.D. Pa. 2006); *Special Value Continuation Partners, L.P. v. Jones*, Adv. No. 11-3304, 2011 WL 5593058, at *8 (Bankr. S.D. Tex. Nov. 10, 2011); *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 424–25 (Bankr. S.D. Tex. 1987). As explained by the *Houston Regional Sports Network* court:

> The proposition that bankruptcy court have broad discretion on whether to abstain comes from both the plain language of the statute and the Fifth Circuit's decision in *Wood v. Wood* [825 F.2d at 93]. Section 1334(c)(1) is a broadly worded statute allowing federal courts to decline to exercise jurisdiction "in the interest of justice, or in the interest of comity with State courts or respect for State law." In *Wood*, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state court to decide.

*In re Houston Reg'l Sports Network, L.P.)*, 514 B.R. at 218 (internal citations omitted).

Courts have identified several factors that may be considered when determining whether to postpone the exercise of its jurisdiction:

(1)    the effect or lack thereof on the efficient administration of the estate if the court decides to abstain;

(2)    the extent to which state law issues predominate over bankruptcy issues;

(3)    the difficult or unsettled nature of applicable law;

(4)    the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding;

(5)    any jurisdictional basis, if any, other than 28 U.S.C. § 1334;

13

(6)    the degree of relatedness or remoteness of the proceeding to the bankruptcy case;

(7)    the substance rather than the form of an asserted core proceeding;

(8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)    the burden of the proceeding on the court's docket;

(10)    the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial;

(12)    the presence in the proceeding of non-debtor parties;

(13)    comity; and

(14)    the possibility of prejudice to other parties in the action.

*In re Foster*, 2020 WL 6127915, at *18 (citing cases); *see also Doe v. Archdiocese of New Orleans Indemnity, Inc.*, No. 20-1338, 2020 WL 4593443, at *4 (E.D. La. Aug. 11, 2020). In the end, "[w]hether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case." *Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P. (In re Schlotzsky's, Inc.)*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). "The court's decision to abstain or not will only be disturbed upon a showing of an abuse of discretion." *Id.* (citing *Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 (5th Cir. 1990)).

After considering that non-exclusive list of factors, the Court finds no cause to abstain from hearing and deciding the State Court Action. First and foremost, comity favors retention of the case in this Court, given the fact that the Trahants are prohibited by the *Barton* doctrine from prosecuting their claims in state court. Moreover, the resolution of the claims asserted in the State Court Action are wholly dependent upon this Court interpreting its own Orders and the

14

execution of those Orders. *See Burch v. Freedom Mortg. Corp. (In re Burch)*, No. 20-10498, 835 F. App'x 741, 748 (5th Cir. 2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders." (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Despite the Trahants' endeavor to fashion the State Court Action otherwise, the claims asserted in the State Court Action are "core" claims that do not exist outside of the bankruptcy context; therefore, state law issues do not begin to predominate the bankruptcy issues at stake. No undue burden to this Court's docket will result from retaining jurisdiction over the State Court Action and no evidence of prejudice to any party has been presented to the Court.

### D. The Trahants' Request To Certify This Order for Direct Appeal to the Fifth Circuit Court of Appeals Is Premature.

The Trahants have requested that, in the event that the Court denies their Motion To Remand, the Court certify its Order for direct appeal to the Fifth Circuit. *See* Motion To Remand, Mem. at 17–18.[6] An order denying a motion to remand is not appealable as a final decision. *See Baker v. Amazon Logistics, Inc*., No. 23-3991, 2023 WL 7683823, at *5 (E.D. La. Nov. 15, 2023). Section 158(a)(3) of Title 28 of the United States Code and Rule 8004 of the Federal Rules of Bankruptcy Procedure govern appeals of interlocutory orders or decrees of a bankruptcy court. Section 158(a)(3) requires leave of the bankruptcy court to appeal an interlocutory order.

Direct appeal to the appropriate court of appeals is available

---

[6]     The Trahants filed the Motion To Remand in the District Court upon removal from state court and thus cited 28 U.S.C. § 1292(b) as the basis for requesting direct certification. That section identifies the standard used by district courts in determining whether to allow an appeal of interlocutory orders. A district court will allow an interlocutory appeal if it finds that "a non-final order '[1] involves a controlling question of law as to which [2] there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Shops & Garage at Canal Place, L.L.C. v. Wilson Canal Place II, LLC*, No. 20-2271, 2021 WL 354444, at *4 (E.D. La. Feb. 2, 2021) (quoting 28 U.S.C. § 1292(b)). That standard tracks, but is not identical to, the standard bankruptcy courts are required to use to certify an interlocutory order for direct appeal to a circuit court of appeals.

(a)    if the bankruptcy court, the district court, or the bankruptcy appellate panel involves, acting on its own motion or on the request of a party to the judgment, order, or decree . . . or all the appellants and appellees (if any) acting jointly, certify that—

>    (i)    the judgment, order, or decree involves a questions of law as to which there is not controlling decision of the courts of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

>    (ii)    the judgment, order, decree involves a question of law requiring resolution of conflicting decisions; or

>    (iii)    an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2).  Bankruptcy Rule 8004(e) states that "[i]f leave to appeal an interlocutory order or decree is required under 28 U.S.C. § 158(a)(3), an authorization of a direct appeal by the court of appeals under 28 U.S.C. § 158(d)(2) satisfies the requirement."  Rule 8006 of the Federal Rules of Bankruptcy Procedure outlines the process for certifying a direct appeal to the Court of Appeals.

The Court declines at this time to consider the Trahants' request for direct certification as the matter is not ripe before this Court.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion To Remand, [ECF Doc. 2], is **DENIED**.

New Orleans, Louisiana, this 30th day of November, 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE