UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: ROMAN CATHOLIC                              CIVIL ACTION
CHURCH OF THE ARCHDIOCESE
OF NEW ORLEANS                                     NO. 24-1873

                                                   SECTION M (2)

## OPINION

Before the Court is the appeal, filed by appellants Richard and Amy Trahant (together, "Appellants"),[1] of the bankruptcy court's orders[2] denying Appellants' motion to recuse the bankruptcy judge,[3] denying Appellants' motion for remand,[4] and granting summary judgment in favor of appellees Mark A. Mintz, Jones Walker, LLP ("Jones Walker"), and Donlin Recano & Company, Inc. ("Donlin Recano") (collectively, "Appellees").[5]  Appellants submit an opening brief in support of their appeal,[6] Appellees respond in opposition,[7] and Appellants reply in further support of their appeal.[8]  Having considered the parties' briefs, the record, and the applicable law, the Court affirms the decisions of the bankruptcy court.

---

[1] R. Doc. 1.

[2] Appellants also assert that they appeal two of this Court's orders.  *See* R. Docs. 1 at 1-2; 15 at 11.  The Court has already explained that it lacks jurisdiction to review its own orders on appeal.  R. Doc. 11 at 6-9.  As such, the Court will not review its orders referring the case to the bankruptcy court (E.D. La. No. 23-2053, R. Doc. 12) and denying Appellants' motion to recuse the bankruptcy judge (E.D. La. No. 23-2053, R. Doc. 21).

[3] *Trahant v. Mintz*, Adv. No. 23-1018 (Bankr. E.D. La.), R. Doc. 51.

[4] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60.

[5] Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 76; 78.

[6] R. Doc. 15.

[7] R. Doc. 18.

[8] R. Doc. 19.

## I.    BACKGROUND

In May of 2020, the Roman Catholic Church of the Archdiocese of New Orleans (the "Archdiocese") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[9] This complex bankruptcy case is still pending, and the Archdiocese continues to manage its property as debtor-in-possession.  Appellees Jones Walker, a law firm, and Mr. Mintz, a Jones Walker partner,[10] have served as counsel to the Archdiocese throughout its bankruptcy,[11] and Donlin Recano, a bankruptcy administrator with specialization in claims management and legal administration services,[12] was appointed claims-and-noticing agent by the bankruptcy court.[13] Prior to filing for bankruptcy, the Archdiocese was defending against scores of state-court lawsuits alleging claims of sexual abuse by priests and other individuals under the supervision of the Archdiocese.[14]  Mr. Trahant represented plaintiffs in some of these cases and then served as counsel to those claimants on the Unsecured Creditors Committee (the "Committee") in the Archdiocese's bankruptcy.[15]

In January of 2022, the Archdiocese notified the bankruptcy court of a suspected breach of the court's protective order governing discovery material exchanged between the Archdiocese and the Committee.[16]  In response, the bankruptcy court ordered an independent investigation by the United States Trustee,[17] who reported that Mr. Trahant willfully violated the protective order by disclosing confidential and protected discovery material to third parties.[18]  On June 7, 2022, the

---

[9] *In re Roman Cath. Church of the Archdiocese of New Orleans*, No. 20-10846 (Bankr. E.D. La.), R. Doc. 1.
[10] Bankr. E.D. La. No. 20-10846, R. Doc. 75-4 at 1.
[11] Bankr. E.D. La. No. 20-10846, R. Doc. 170.
[12] Bankr. E.D. La. No. 20-10846, R. Doc. 10 at 3.
[13] Bankr. E.D. La. No. 20-10846, R. Doc. 188.
[14] Bankr. E.D. La. No. 20-10846, R. Doc. 60 at 1-2.
[15] R. Doc. 15 at 13-14; Bankr. E.D. La. No. 20-10846, R. Doc. 60 at 2.
[16] Bankr. E.D. La. No. 20-10846, R. Doc. 1256.
[17] Bankr. E.D. La. No. 20-10846, R. Doc. 1468.
[18] Bankr. E.D. La. No. 20-10846, R. Doc. 1574 at 3.

bankruptcy court issued a memorandum opinion and order memorializing its findings, ordering the United States Trustee to remove Mr. Trahant's clients from the Committee, and ordering Appellees to serve a copy of the order "on those parties in interest who will not receive service via this Court's CM/ECF system" (the "June 7 Order").[19]

This lawsuit was filed in state court by Appellants on June 2, 2023, asserting claims for abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium, all in connection with the Appellees' service of the June 7 Order.[20]  Appellants specifically allege that Appellees "disseminat[ed] the [June 7] Order far beyond what was necessary and ordered by the bankruptcy court – to embarrass and humiliate Mr. Trahant," and in violation of "the terms of the [June 7] Order and the bankruptcy judge's verbal instructions."[21]  Appellees removed the action to this Court based in part on bankruptcy subject-matter jurisdiction under 18 U.S.C. § 1334(b),[22] and the Court referred the action to the bankruptcy court upon finding that the Appellants' claims implicated the bankruptcy court's gatekeeping function under the *Barton* doctrine.[23]  Appellants then filed in this Court a 28 U.S.C. § 144 affidavit and motion to recuse the bankruptcy judge,[24] which the Court denied, holding that § 144 does not apply to bankruptcy judges, and that § 144 motions must be filed before the judge sought to be recused.[25]  Appellants subsequently filed in the bankruptcy court a motion to recuse the bankruptcy judge pursuant to 28 U.S.C. §§ 144 and 455, which was denied.[26]  The bankruptcy court then denied the Appellants' motion to remand their suit (now an adversary proceeding) to state court.[27]  In due course, the bankruptcy judge

---

[19] *Id.*
[20] E.D. La. No. 23-2053, R. Doc. 1-1.
[21] *Id.* at 6.
[22] E.D. La. No. 23-2053, R. Doc. 1.
[23] E.D. La. No. 23-2053, R. Doc. 12.
[24] E.D. La. No. 23-2053, R. Docs. 19; 22.
[25] E.D. La. No. 23-2053, R. Doc. 21.
[26] Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 17; 51.
[27] Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 2; 60.

granted the Appellees' motion for summary judgment, dismissing Appellants' claims.[28] Appellants now appeal these orders of the bankruptcy court.

## II.    LAW & ANALYSIS

### A.  LEGAL STANDARD

"The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." 28 U.S.C. § 158(a)(1).  This includes appeals from final judgments issued in bankruptcy adversary proceedings.  *In re Boca Arena, Inc.*, 184 F.3d 1285, 1286 (11th Cir. 1999) ("In bankruptcy, adversary proceedings generally are viewed as 'stand-alone lawsuits,' and final judgments issued in adversary proceedings are usually appealable as if the dispute had arisen outside of bankruptcy."), *quoted with approval in In re Dorsey*, 870 F.3d 359, 362-63 (5th Cir. 2017).[29]  This appellate process generally functions "in the same manner as appeals in civil proceedings … taken to the courts of appeals from the district courts." 28 U.S.C. § 158(c)(2).  The district court, sitting in its appellate capacity, reviews the bankruptcy court's conclusions of law and mixed questions of law and fact *de novo* and findings of fact for clear error.  *In re Texxon Petrochems., L.L.C.*, 67 F.4th 259, 262 (5th Cir. 2023).  The court of appeals applies the same standard when reviewing the district court's decision on second review of a bankruptcy court order. *Id.*

---

[28] Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 11; 76; 78.

[29] *See also In re Moore*, 739 F.3d 724, 727-28 (5th Cir. 2014) (holding that bankruptcy court had constitutional authority to enter final judgment in adversary proceeding because resolution of state-law claims was necessary to adjudication of a proof of claim in the claims allowance process, which is part and parcel of the consideration and confirmation of a reorganization plan).

**B. ANALYSIS**

### 1. Motion for Recusal of the Bankruptcy Judge

#### a. Section 144

Appellants filed a motion to recuse the bankruptcy judge "pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144."[30]  The bankruptcy court held "that § 144 by its plain terms does not apply to bankruptcy judges."[31]  Pursuant to § 144,

> Whenever a party to any proceeding in a *district court* makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144 (emphasis added).  The Fifth Circuit has held that § 144 "by its terms applies only to district judges." *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979).  Other courts within this circuit have likewise held that "the application of section 144, unlike section 455, is limited to district court judges.  It is not applicable to bankruptcy judges or federal appellate judges." *In re Foster Iron Works, Inc.*, 3 B.R. 715, 718 (S.D. Tex. 1980); *see also In re Prince*, 2016 WL 1398480, at *1 n.1 (Bankr. E.D. Tex. Apr. 6, 2016) (noting that "there is a 'substantial body of case law holding that § 144 applies only to district court judges and does not govern motions for recusal of a bankruptcy judge.'" (quoting *In re Haas*, 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003)).  Moreover, the Federal Rules of Bankruptcy Procedure specifically provide that "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455."  Fed. R. Bankr. P. 5004(a).

Appellants "disagree" with the bankruptcy court's holding that § 144 does not apply to bankruptcy judges "for two reasons." [32]  As Appellees point out, this is "the third time in this

---

[30] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 17.
[31] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 8.
[32] R. Doc. 15 at 32.

litigation [that] the [Appellants] ignore controlling United States Supreme Court and Fifth Circuit precedent confirming that § 144 does not apply to bankruptcy judges."[33]  Neither of Appellants' current arguments surmount this controlling precedent.  Appellants' first argument – that "by not giving a party alleging bias the opportunity to have a second judge adjudicate the recusal issue, a bankruptcy judge would be afforded more power and autonomy in the area of recusal than both Article III judges and [f]ederal magistrate judges"[34] – is premised on a misunderstanding of how § 144 functions.  As the bankruptcy court explained, Appellants' assertion that the filing of a § 144 affidavit "automatically triggers the reassignment of the matter to another judge … is not true" because the presiding judge must determine whether or not the affidavit is legally sufficient.[35]  Appellants' second reason is that "the [b]ankruptcy [c]ourt was undoubtedly standing in the shoes of the [d]istrict [c]ourt by presiding over a tort lawsuit that was initially filed in state court, removed, and referred to the [b]ankruptcy [c]ourt."[36]  This argument is presumably based on Appellants' assumption that the bankruptcy court lacks jurisdiction to hear their removed state-court action,[37] which this Court rejects.[38]  Thus, the bankruptcy judge correctly held that § 144 did not apply.

### b.  Section 455

The bankruptcy court noted that the inapplicability of § 144 to bankruptcy judges was "of no moment … because Congress amended § 455 in 1974 to 'entirely duplicate the grounds of recusal set forth in § 144 (bias or prejudice).'"[39]  Section 455 provides that "[a]ny justice, judge,

---

[33] R. Doc. 18 at 38 (citing *Hepperle*, 590 F.2d at 613; *Liteky v. United States*, 510 U.S. 540, 548 (1994)).

[34] R. Doc. 15 at 32.

[35] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 8.

[36] R. Doc. 15 at 32.

[37] *See id.* at 28 ("Clearly, in the most favorable scenario to confer any jurisdiction on the [b]ankruptcy [c]ourt in the case at bar, it only would have been able to submit proposed findings of fact and conclusions of law to this Court – not the power to finally adjudicate a state court tort case." (emphasis omitted)).

[38] *See infra* § II(B)(2).

[39] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 9 (alteration omitted) (quoting *Liteky*, 510 U.S. at 548).

or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In addition to this general recusal requirement, § 455 also enumerates five circumstances under which recusal is required, including "[w]here [the judge] has a personal bias or prejudice concerning a party." *Id.* § 455(b)(1). Motions for recusal under § 455 are evaluated under an objective standard – specifically, "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995). Courts must also undertake "a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003). "Finally, the origin of a judge's alleged bias is of critical importance." *Id.* Per the extrajudicial source rule,

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky,* 510 U.S. at 555 (emphasis in original). Thus, to succeed on their § 455 motion, Appellants "must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire trial, and (3) do so by an 'objective' observer's standard." *Andrade*, 338 F.3d at 455. Denial of a motion to recuse is reviewed for abuse of discretion. *Id.*

In support of their argument that the bankruptcy judge should have granted their motion to recuse, Appellants recite the contents of Mr. Trahant's § 144 affidavit,[40] consisting primarily of alleged "statements of bias made by the [b]ankruptcy [c]ourt during sealed status conferences, which Mr. Trahant was not allowed to attend," that, according to Appellants, "clearly emanated from extrajudicial sources."[41]    Appellees argue that these "intrajudicial statements … are insufficient to constitute a basis for impartiality or prejudice under *Liteky*."[42]  Because "[t]he vast majority of" these statements were "expressed on the record by the [bankruptcy court] within the course of judicial proceedings,"[43] they must demonstrate "such a high degree of favoritism or antagonism as to make fair judgment impossible" to warrant recusal.  *Liteky,* 510 U.S. at 555.  The bankruptcy court, after methodically analyzing the statements in their proper context, determined that "a reasonable person, being fully advised on the facts, would not harbor doubts regarding this [c]ourt's impartiality to hear and decide the [a]dversary [p]roceeding."[44]  It is clear from the bankruptcy court's thorough analysis[45] that none of the statements cited by Appellants had an extrajudicial source and all arose out of the bankruptcy judge's concern for the fair and efficient administration of the Archdiocese's bankruptcy, not bias toward or against any party – much less "such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Id.*

The remaining allegations raised by Appellants likewise fail to meet the objective standard for recusal set by § 455.  Appellants describe the inclusion of "the exclamatory statement 'Yes!' in the caption" of the bankruptcy court's show-cause order regarding sanctions for Mr. Trahant's violation of the protective order[46] (which has been amended to remove this admitted typographical

---

[40] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 17.
[41] R. Doc. 15 at 33 (emphasis omitted).
[42] R. Doc. 18 at 41.
[43] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 12.
[44] *Id.* at 31.
[45] *Id.* at 13-27.
[46] Bankr. E.D. La. No. 20-10846, R. Doc. 1589.

error) as an "apparently gleeful exclamation at the prospect of Mr. Trahant being sanctioned" which "reeks of bias against him," despite the absence of any indication that the inclusion was intentional.[47]   Appellees point out that this speculative characterization "reflects the view of the 'hypersensitive, cynical, and suspicious person.'"[48]   The Court agrees with the bankruptcy court's view that, to the "well-informed, thoughtful and objective observer," *Jordan*, 49 F.3d at 156, this is "likely more reflective of the mistakes that can be made when an attorney or law clerk is drafting multiple documents, e-mails, and Teams messages across numerous open 'windows' on computer screens" than a "purposefully embedded" statement of the court's bias in the header of its order.[49]

Appellants briefly argue that the bankruptcy judge's "partnering with Jones Walker or the Apostolates' attorneys for [continuing legal education panels] and having taught a class with Mr. Mintz," under "the totality of the circumstances[,] gives the Trahants and many others the undeniable impression that Judge Grabill favors Mr. Mintz and Jones Walker."[50]   In rejecting this argument, the bankruptcy court observed that "'[t]he cases make clear that participation on an educational panel with counsel is not a basis for recusal, for sound policy reasons.'"[51]   The same policy reasons also militate against a holding that the bankruptcy judge's co-teaching a law school class with a practitioner in the same field warrants recusal.   *See, e.g.,* Code of Conduct for U.S. Judges Canon 4 cmt. (encouraging judges to participate in extrajudicial activities, including lecturing and teaching).   The bankruptcy judge also pointed out that her having taught a class with Mr. Mintz "was disclosed at the early days of the Archdiocese's bankruptcy case on May 15, 2020, in connection with Jones Walker's employment application" and that Mr. Trahant, as counsel to

---

[47] R. Doc. 15 at 36.
[48] R. Doc. 18 at 46 (quoting *Andrade*, 338 F.3d at 454-55).
[49] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 26 n.6.
[50] R. Doc. 15 at 41.
[51] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 27 (quoting *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 160 (S.D.N.Y. 2012) (collecting cases)).

members of the Committee at the time, received that disclosure, but never filed any opposition to Jones Walker's appointment as debtor's counsel.[52]  As Appellees observe,[53] aside from the general assertion that "Mr. Mintz must be viewed through the lens of the Trahants as litigants, not through the lens of Mr. Trahant as an attorney,"[54] Appellants do not address the bankruptcy judge's reasons for rejecting the lecturing/teaching ground for urging that she was biased in favor of Appellees.

Appellants then contend that the bankruptcy court erroneously failed to consider Ms. Trahant's declaration and the form declarations solicited from over 40 individuals filed with Appellants' recusal motion.[55]  The bankruptcy court explained that "the declarations contain only the declarants' 'distinct impressions,' beliefs, and opinions as to whether this Court must withdraw from hearing the [a]dversary [p]roceeding" and therefore determined that they "are not appropriate for the [bankruptcy court] to consider in deciding the legal issue of recusal."[56]  Appellants argue that the bankruptcy court misconstrues the case it cited in support of this determination because that case concerned the legal conclusions of an expert witness and "not a single [d]eclaration submitted by the [Appellants] was tendered by an expert, nor do the [d]eclarations offer a legal or expert opinion."[57]  But, as noted by Appellees,[58] while it is true that expert witnesses may not offer

---

[52] *Id.* at 28.

[53] R. Doc. 18 at 41 n.62.

[54] R. Doc. 15 at 41.

[55] *Id.* at 41-45 (discussing Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 36-1; 36-2).

[56] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 30 (alteration omitted).

[57] R. Doc. 15 at 45.  The form declarations state, in pertinent part:

It is my distinct impression that Judge Grabill has painted Mr. Trahant as the bad guy, which is offensive when I consider that this bankruptcy is about pedophile clergy and an organization that has protected them. … *I believe that there is a significant appearance of impropriety for Judge Grabill to preside over a separate lawsuit that the Trahants have filed, as I believe she is biased against Mr. Trahant.*

Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 36-2 (emphasis added).  The final sentence, which Appellants omit from their recitation of "the pertinent, common language" of the declarations (R. Doc. 19 at 12), essentially states the declarant's "belief" that the criteria requiring recusal under § 455 are met:  "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his *impartiality might reasonably be questioned* [or w]here he has a *personal bias or prejudice concerning a party*."  28 U.S.C. § 455(a)-(b)(1) (emphasis added).

[58] R. Doc. 18 at 47 (citing Fed. R. Evid. 701).

10

opinions as to legal conclusions, neither may lay witnesses.  *See, e.g., United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011) ("It is also generally prohibited for a lay witness to interpret statutes and to give legal opinions.").  To the extent the declarations offer opinions as to legal conclusions, it was appropriate for the bankruptcy court to ignore them.  Even if the declarations had included factual assertions, the bankruptcy court would not have been required to accept such assertions as true.  *See* 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3550, at 126 (3d ed. 2024) ("Since § 455 imposes a duty directly on the judge to evaluate his own conduct, it requires no affidavit.  If a party does move for disqualification under § 455, and the motion is supported by an affidavit, a verified memorandum, or a statement of facts in some other form, the court is not required to accept the factual statements as true.").

Lastly, Appellants assert that the recusal of Judge Papillion,[59] before this matter was transferred to the undersigned, "should … have been instructive and binding on the [b]ankruptcy [c]ourt's recusal decision."[60]  Appellants do not explain why Judge Papillion's recusal – on the stated ground that he, "while engaged in the private practice of law, may have acquired certain knowledge that … warrants his recusal from this action"[61] – should be "binding" on any other judge.  The bankruptcy judge was the "most familiar with [her own] alleged bias or conflict of interest," *Chitimacha Tribe v. Harry L. Laws Co*., 690 F.2d 1157, 1162 (5th Cir. 1982), and thus, as she explained, another judge's decision to recuse himself from this matter has no bearing on her

---

[59] E.D. La. No. 23-2053, R. Doc. 5.
[60] R. Doc. 15 at 46-50 (quote at 46).
[61] E.D. La. No. 23-2053, R. Doc. 5.

determination of whether her own recusal is appropriate.[62]  Accordingly, the bankruptcy court did

not abuse its discretion in denying Appellants' motion to recuse.

### 2.  Motion for Remand

A party may remove a claim in a civil action to a federal district court if that court has

jurisdiction of such claim under 28 U.S.C. § 1334.  *See* 28 U.S.C. § 1452(a).  Section 1334 states

that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  Because

federal courts have limited jurisdiction, the removal statute is strictly construed, and any

ambiguities are construed against removal and in favor of remand.  *Manguno v. Prudential Prop.*

*& Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  The party seeking removal has the burden of

establishing that federal subject-matter jurisdiction exists and that removal was proper.  *Id.*

### a.  Core Proceeding

Pursuant to 28 U.S.C. § 157(a) and this district's general order of reference, "[a]ll cases

under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under

Title 11 are transferred by the district court to the bankruptcy judges of this district."  Local Rule

83.4.1.  "Core" proceedings are defined as those "arising under title 11, or arising in a case under

title 11."  28 U.S.C. § 157(b)(1).  The Fifth Circuit has explained the distinction between "arising

under" and "arising in" jurisdiction:

> Congress used the phrase "arising under title 11" to describe those proceedings that
> involve a cause of action created or determined by a statutory provision of title 11.
> …  The meaning of "arising in" proceedings is less clear, but seems to be a reference
> to those "administrative" matters that arise *only* in bankruptcy cases.  In other
> words, "arising in" proceedings are those that are not based on any right expressly
> created by title 11, but nevertheless, would have no existence outside of the
> bankruptcy.

---

[62] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51 at 27 n.7 ("[Judge Papillion's] decision is individual to him just as [the bankruptcy judge]'s decision is individual to her.").

*In re Wood*, 825 F.2d 90, 96-97 (5th Cir. 1987) (footnotes omitted; emphasis in original). "Non-core" proceedings are "related to a case under title 11" and may only be referred to a bankruptcy court for judgment "with the consent of all the parties to the proceeding." 28 U.S.C. § 157(c)(2); *see In re Wood*, 825 F.2d at 97 ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy …."). The procedure for determining whether a proceeding is "core" or "non-core" is prescribed by statute:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3). "When a proceeding implicates the bankruptcy court's power to interpret and enforce its own orders, it is core in at least the 'arising in' way." *In re McDermott Int'l, Inc.*, 2024 WL 3875141, at *2 (5th Cir. Aug. 20, 2024) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.")).

Appellants contend that "it was never properly established that this case constitutes a 'core proceeding.'"[63] Appellants specifically argue that the bankruptcy court neglected to "perform a claim-by-claim analysis to determine the extent of its jurisdiction"[64] and that there was "never a

---

[63] R. Doc. 15 at 24. Appellants also assert that § 157(b)(5), which states, in pertinent part, that "[t]he district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose," prohibits a bankruptcy court from granting summary judgment in a tort case. *Id.* This Court has already rejected this argument, explaining that § 157(b)(5) "only require[s] that personal injury tort claims be *tried* in the district court, not that the district court handle all pretrial matters." E.D. La. No. 23-2053, R. Doc. 18 at 7 (emphasis added). Accordingly, the bankruptcy court had jurisdiction to preside over pretrial motions, including dispositive motions. *See Collum v. City of Chi.*, 2023 WL 6127158, at *2 (N.D. Ill. Sept. 19, 2023) ("As numerous courts have held, § 157(b)(5) 'allows for pretrial consideration of personal injury tort claims by the bankruptcy court, including a determination that such a claim is legally unenforceable.'" (alteration omitted) (quoting *In re UAL Corp.*, 310 B.R. 373, 381 (Bankr. N.D. Ill. 2004))).

[64] R. Doc. 15 at 24 (citing *Halper v. Halper*, 164 F.3d 830, 838-40 (3d Cir. 1999)).

motion by any party or the [b]ankruptcy [c]ourt" to make such a determination, as required by § 157(b)(3).[65]  Instead, say Appellants, "the [b]ankruptcy [c]ourt simply stated that this is a core proceeding."[66]  This is a mischaracterization.  This Court referred Appellants' removed action to the bankruptcy court, noting that it "appear[ed] to this Court" that "[Appellants'] claims constitute either a core proceeding or, at least, a proceeding related to a title 11 case," but specifically reserving the "determination of these threshold issues … to the bankruptcy judge … given the bankruptcy court's thorough familiarity with bankruptcy proceedings and its gatekeeping function under the *Barton* doctrine."[67]  When Appellants urged this Court to reconsider its referral order,[68] the Court again explained that "under its gatekeeping function, the bankruptcy court is empowered to determine – in the first instance – whether subject-matter jurisdiction exists."[69]  Accordingly, the bankruptcy court examined its jurisdiction, found that it had subject-matter jurisdiction, and denied remand, upon determining that the removed state-court action constituted a core proceeding because the "claims [asserted therein] could not exist outside of the bankruptcy context."[70]  And while the bankruptcy court did not expressly say that it was evaluating Appellants' complaint claim-by-claim, it appears that it likely did so and, regardless, would have reached the same result had it done so.  As the bankruptcy court explained, all of Appellants' claims "arise from the [Appellees'] roles as [d]ebtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the [d]ebtor to serve this [c]ourt's [June 7] Order."[71]

---

[65] *Id.* at 25.  To the extent Appellants argue that to comply with § 157(b)(3), the bankruptcy court's determination that this is a core proceeding must have been made pursuant to a party's motion specifically seeking same, they are mistaken.  Section 157(b)(3) explicitly permits such determinations to be made "on the judge's own motion," as the bankruptcy court did in addressing Appellants' motion to remand.

[66] *Id.*

[67] Bankr. E.D. La. Adv. No. 23-2053, R. Doc. 12 at 2 (internal citations omitted).

[68] Bankr. E.D. La. Adv. No. 23-2053, R. Doc. 13.

[69] Bankr. E.D. La. Adv. No. 23-2053, R. Doc. 18 at 7.

[70] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60 at 11.

[71] *Id.* at 8.

In other words, *each* of Appellants' claims (abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium[72]) arise out of the same set of alleged facts concerning Appellees' interpretation and enforcement of an order of the bankruptcy court and, thus, Appellants' state-court action "implicates the bankruptcy court's power to interpret and enforce its own orders." *In re McDermott Int'l, Inc.*, 2024 WL 3875141, at *2. Therefore, the bankruptcy court properly determined that all of Appellants' claims are "'core' matters upon which [it] may enter final judgment." [73]

> ### b. The *Barton* Doctrine

The *Barton* doctrine vests only the bankruptcy court with the authority to grant leave for the pursuit of any claims directed against officials appointed by the bankruptcy court concerning acts done in their official capacity. *See, e.g.*, *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 439 (5th Cir. 2022) (discussing and applying *Barton v. Barbour*, 104 U.S. 126 (1881)). "However, the *Barton* doctrine does not apply to ultra vires acts. Acts are ultra vires if they are 'outside the scope

---

[72] In arguing that mandatory abstention applies, Appellants also suggest that state-law claims between non-debtors cannot be "core" proceedings. *See* R. Doc. 15 at 51-52 ("'The issues raised in the [a]dversary [proceeding] are state law claims between non-debtors and, as such, do not fall within the jurisdictional grant respecting matters arising in, or arising under, or core proceedings.' This is exactly the dynamic between the parties to this litigation." (emphasis omitted) (quoting *In re Forth Worth Osteopathic Hosp., Inc*., 406 B.R. 741, 745 (Bankr. N.D. Tex. 2009)). This Court and others in this circuit have rejected the notion that "core" proceedings categorically exclude such claims. *See, e.g., In re Tidewater Landfill LLC*, 2024 WL 4209572, at *5 (Bankr. E.D. La. Sept. 13, 2024) ("Movants deny that [the bankruptcy court] has any jurisdiction over the [removed state-court action] because it 'concerns state law claims and involves many more defendants which are nondebtors.' … But this Court further finds that the removed [state-court action] now constitutes a 'core proceeding' that the [bankruptcy court] may hear and determine on a final basis [because it involved the allowance and disallowance of claims, a core proceeding]."); *In re Drs. Hosp. 1997, L.P.*, 351 B.R. 813, 849 (Bankr. S.D. Tex. 2006) ("[Plaintiffs] put great importance on the fact that this proceeding involves only non-debtors and only state law claims. Their focus is on the form of the proceeding. However, moving beyond the posture of the parties to the substantive issues involved, the outcome of this proceeding could have a significant impact on the success of the [p]lan [of reorganization]. [As such,] this is still a core proceeding."). *Cf. In re Efficient Sols., Inc*., 2000 WL 1876356, at *5 (E.D. La. Dec. 20, 2000) (finding that "state law claims between nondebtors, *which do not involve substantive rights conferred by title 11 or proceedings that could only arise in a bankruptcy case*[,]" were not core proceedings (emphasis added)).

[73] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60 at 11. Because Appellants' claims are "core" matters, Appellants' argument that their consent was required for the bankruptcy court to the adjudicate their claims (*see* R. Doc. 15 at 25-28) fails. The parties' consent is only necessary for bankruptcy courts to adjudicate "non-core" claims. *See* 28 U.S.C. § 157(b)(2).

of the person's official duties.'" *In re Foster*, 2023 WL 20872, at *5 (5th Cir. Jan. 3, 2023) (footnotes and alteration omitted) (quoting *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019)). "'The classic application of the ultra vires exception is the case of an action against a receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party.'" *Juravin v. Fla. Bankr. Tr.*, 2024 WL 4677417, at *6 (11th Cir. Nov. 5, 2024) (quoting *In re DMW Marine, LLC*, 509 B.R. 497, 506 (Bankr. E.D. Pa. 2014)).

The bankruptcy court held that the *Barton* doctrine applies to this proceeding because "all of the claims asserted in the [s]tate [c]ourt [a]ction arise from the [Appellees]' roles as [d]ebtor's professionals in the underlying bankruptcy case,"[74] and thus, "without leave of [the bankruptcy c]ourt, no other court enjoys subject-matter jurisdiction over the [s]tate [c]ourt [a]ction."[75] Appellants argue that the *Barton* doctrine "simply does not apply here," because Appellees "are not trustees, employees of a trustee, fiduciaries, or other court-appointed officers."[76] Not true. As Appellees point out,[77] the Fifth Circuit has extended the *Barton* doctrine to "court-approved professional[s] employed by a bankruptcy trustee such as counsel for the trustee." *In re Foster*, 2023 WL 20872, at *5. Thus, the *Barton* doctrine applies to Appellees as court-approved claims-and-noticing agent and counsel for the debtor-in-possession.[78]

In the alternative, Appellants argue that, because "[Appellees] did something that clearly was not ordered by the [b]ankruptcy [c]ourt," the *Barton* doctrine's *ultra vires* exception applies.[79] Specifically, Appellants' allege that "Mr. Mintz and Donlin Recano caused the [June 7] Order to

---

[74] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60 at 8.
[75] *Id.* at 9.
[76] R. Doc. 15 at 28-29.
[77] R. Doc. 18 at 51 n.84.
[78] "[A] debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a).
[79] R. Doc. 15 at 29.

be mailed to the 'Master Creditor Mailing Matrix,'" with the "ulterior purpose" of "embarrass[ing] and humiliat[ing] Mr. Trahant."[80]    Appellees counter that Appellants "do not claim that the Appellees seized anyone's property" and thus their claims "do not fit within the *ultra vires* exception."[81]    The Fifth Circuit has taken note of other courts' narrow application of the *ultra vires* exception:

> Although this court has not yet addressed the breadth of the ultra vires exception to the *Barton* doctrine, other circuits have applied the exception narrowly and only "to the actual wrongful seizure of property by a trustee."    Further, an unpublished Tenth Circuit case limits the exception to claims by independent third parties.    Finally, as the Tenth Circuit has noted, "claims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives."

*In re Foster*, 2023 WL 20872, at *5 (footnotes omitted) (first quoting *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013), then citing *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 148-49 (10th Cir. 2009), and then quoting *Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012)).    *See also In re Ondova Ltd.*, 2017 WL 477776, at *10 (Bankr. N.D. Tex. Feb. 1, 2017) ("It appears that it is rare for a court to extend the 'ultra vires' exception beyond situations where a trustee seizes property which is found not to be property of the estate." (quotation omitted)), *adopted*, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), *aff'd*, 914 F.3d 990 (5th Cir. 2019).    Appellants cite no authority applying the *ultra vires* exception to allegations of conduct other than the wrongful seizure of property.[82]    Thus, because Appellants have not alleged that Appellees wrongfully seized any property, the *ultra vires* exception does not apply.[83]

---

[80] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 1-1 at 5-6.

[81] R. Doc. 18 at 52.

[82] R. Doc. 19 at 17 ("With respect to the Fifth Circuit's application of the *Barton* doctrine, [Appellants] can only agree with Appellees that the Fifth Circuit has not yet addressed the 'breadth' of this exception.").

[83] Since observing in *Foster* that it "has not yet addressed the breadth of the ultra vires exception to the *Barton* doctrine," 2023 WL 20872, at *5, the Fifth Circuit has recently applied the *ultra vires* exception in *In re Preferred Ready-Mix, L.L.C.*, 2024 WL 5252498 (5th Cir. Dec. 31, 2024).    *Preferred Ready-Mix* involved a state-court-appointed receiver who seized property of the debtor before the debtor filed for Chapter 11 bankruptcy.    The debtor brought an adversary proceeding against the receiver in the bankruptcy court after the receiver demanded an

Even if some allegations other than wrongful seizure of property fall under the scope of the *ultra vires* exception, Appellants' tort claims based on Appellees' service of the June 7 Order in their roles as court-approved professionals would not. As in *Foster*, the conduct alleged in Appellants' complaint is directly related to Appellees' discharge of their duties (as court-approved professionals in this case, employed on behalf of the debtor-in-possession[84]). *See In re Foster*, 2023 WL 20872, at *3 ("[T]he claims [the debtor] raises against the [defendants] in her complaint all arise from their roles as trustee and counsel for the trustee in the underlying bankruptcy case ….."). If a plaintiff could circumvent the *Barton* doctrine's jurisdictional bar simply by alleging that a defendant discharged its duties in bad faith, the *Barton* doctrine would hardly ever apply – meaning that the *ultra vires* exception would swallow the *Barton* rule. *See id.* ("'[C]laims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives.'" (quoting *Satterfield*, 700 F.3d at 1236)); *see also Satterfield*, 700 F.3d at 1236-37 ("[W]e refuse to recognize a 'generalized tort exception to the *Barton* doctrine.' … The *Barton* doctrine exists to ensure other courts do not intervene in the bankruptcy court's administration of an estate without permission. A holding that [the trustee] acted ultra vires simply because he allegedly discharged his duties as trustee with improper motives would severely undermine this important judicial goal."); *cf. In re Ondova Ltd.*,

_____

administrative fee in exchange for release of the seized property post-filing. *Id*. at *1. The Fifth Circuit, reversing the district court's dismissal of the debtor's claims against the receiver under the *Barton* doctrine, held that the *ultra vires* exception applied because the receiver "only had appointing court authority to seize and maintain [the debtor's] property, not property of the bankruptcy estate," and therefore "was without authority – and acted *ultra vires* – when he continued to seize and maintain possession of property of the bankruptcy estate despite receiving notice of the bankruptcy petition and a demand for turnover." *Id.* at *2 (citing *In re Foster*, 2023 WL 20872, at *5). This holding is consistent with the Fifth Circuit's observation in *Foster* that the *ultra vires* exception has only been applied "to the actual wrongful seizure of property." 2023 WL 20872, at *5 (quotation omitted). Thus, there is no reason to believe that *Preferred Ready-Mix* expanded the scope of the *ultra vires* exception beyond that described in *Foster*.

[84] *See* Bankr. E.D. La. No. 20-10846, R. Docs. 188 at 2 (order appointing Donlin Recano claims-and-noticing agent and "authoriz[ing] and direct[ing]" Donlin Recano to, *inter alia*, "provide notice and service of pleadings, orders, and notices limited to those matters formally filed on the docket of this Case"); 1574 at 5 (ordering "counsel for the [d]ebtor [to] serve this [o]rder …..").

2018 WL 580151, at *2 ("Plaintiff must plausibly allege that the nature of the Trustee's conduct is inconsistent with his authority.") (discussing the *ultra vires* exception to derivative judicial immunity).  In any event, because the bankruptcy court correctly found that Appellees "did not plausibly act outside the scope of their duties," *In re Foster*, 2023 WL 20872, at *5, and acted in good faith in serving the June 7 Order,[85] the *ultra vires* exception, even if applicable to Appellee's tort claims, would not operate here.

### c.  Abstention

Appellants contend that mandatory abstention applies because this proceeding concerns state-law claims between non-debtors.[86]  However, only proceedings based on state-law claims that are "related to a case under title 11 but not arising under title 11 or arising in a case under title 11," *i.e.,* "non-core" proceedings, are subject to mandatory abstention under 28 U.S.C. § 1334(c)(2).  *In re Foster*, 2023 WL 20872, at *3 ("[M]andatory abstention does not apply to core proceedings.").  Because this Court agrees with the bankruptcy court's determination that this is a "core" proceeding,[87] it also affirms the bankruptcy court's holding that mandatory abstention does not apply.

In the alternative, Appellants contend that the bankruptcy court should have exercised its discretion to abstain from hearing the case under 28 U.S.C. § 1334(c)(1).  "Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction

---

[85] *See infra* § II(B)(3)(a) (discussing the *ultra vires* exception to the theory of derivative judicial immunity). The *Ondova* district court distinguished the jurisdictional *Barton* doctrine from the theory of derivative judicial immunity, which shields trustees (and other bankruptcy court-appointed officers) from liability, but noted that "as part of engaging in the *Barton* doctrine examination, a bankruptcy court may, but is not required to, consider whether the trustee should enjoy immunity as a basis for disallowing the matter to proceed in another forum." *In re Ondova Ltd.*, 2017 WL 477776, at *15 n.104.  *See also In re McKenzie*, 716 F.3d 404, 414 (6th Cir. 2013) ("Whether a bankruptcy trustee's actions were *ultra vires* is a question that courts most often addressed in the related context of determining whether jurisdiction is restricted to the bankruptcy court under the common-law *Barton* doctrine.") (applying the *ultra vires* exception to derivative judicial immunity).

[86] R. Doc. 15 at 51-53.

[87] *See supra* § II(B)(2)(a).

conferred and adjudicate a controversy properly before it." *In re Foster*, 2020 WL 6127915, at

*18 (Bankr. N.D. Tex. Oct. 15, 2020), *aff'd*, 2022 WL 160239 (N.D. Tex. Jan. 18, 2022), *aff'd,*

2023 WL 20872 (5th Cir. Jan. 3, 2023).  Courts consider several factors to determine whether

permissive abstention is appropriate, including:

    (1)    the effect or lack thereof on the efficient administration of the estate if the court decides to abstain;

    (2)    *the extent to which state law issues predominate over bankruptcy issues*;

    (3)    the difficult or unsettled nature of applicable law;

    (4)    the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding;

    (5)    any jurisdictional basis, if any, other than 28 U.S.C. § 1334;

    (6)    *the degree of relatedness or remoteness of the proceeding to the bankruptcy case*;

    (7)    *the substance rather than the form of an asserted core proceeding*;

    (8)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

    (9)    the burden of the proceeding on the court's docket;

    (10)    the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties;

    (11)    the existence of a right to a jury trial;

    (12)    the presence in the proceeding of non-debtor parties;

    (13)    *comity*; and

    (14)    the possibility of prejudice to other parties in the action.

*Id.* (emphasis added).  The decision whether or not to abstain is reviewed for abuse of discretion.

*See In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990).

    The bankruptcy court determined that the balance of the factors weighed against abstention.

The court explained, "[f]irst and foremost, [that] comity favors retention of the case in [bankruptcy

court] given the fact that the [Appellants] are prohibited by the *Barton* doctrine from prosecuting

their claims in state court."[88]  The court further reasoned that the resolution of Appellants' claims is "wholly dependent upon [the bankruptcy court] interpreting its own [o]rders and the execution of those [o]rders" and because the claims are "'core' claims that do not exist outside of the bankruptcy context … state law issues do not begin to predominate the bankruptcy issues at stake."[89]  Considering the compelling nature of the reasons cited by the bankruptcy court, this Court agrees with Appellees that "it cannot be said that the bankruptcy court abused its broad discretion in denying [Appellants'] request for equitable remand."[90]

### 3. Motion for Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id.* at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id.* at 324.

---

[88] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60 at 14.
[89] *Id.* at 14-15.
[90] R. Doc. 18 at 57.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue,

the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### a. Derivative Judicial Immunity in General

The bankruptcy court granted summary judgment in Appellee's favor, holding that Appellees were entitled to absolute derivative judicial immunity from Appellants' claims because Appellees served the June 7 Order "'under the supervision and subject to the orders of the bankruptcy judge,' and, therefore, as an arm of the [bankruptcy court]."[91]  When court-appointed trustees or debtors-in-possession act "under the supervision and subject to the orders of the bankruptcy judge," they are derivatively entitled to the appointing judge's absolute judicial immunity. *Boullion*, 639 F.2d at 214; *see also In re Ondova Ltd.*, 914 F.3d at 993 ("Trustees are entitled to absolute immunity for all actions taken pursuant to a court order.").  Even when not acting pursuant to court orders, trustees and debtors-in-possession enjoy qualified immunity for actions taken within the scope of their official duties. *See In re Ondova Ltd.*, 914 F.3d at 993 ("[N]umerous sister circuits have held that trustees have qualified immunity for personal harms caused by actions taken within the scope of their official duties. … There is no compelling reason to depart from our sister circuits' sensible approach.").  This immunity also derivatively extends to court-approved professionals, such as attorneys, *id.* at 994, when "acting 'at the direction of the trustee and for the purpose of administering the estate or protecting its assets.'" *In re Ondova Ltd.*, 2018 WL 580151, at *3 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

---

[91] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 76, at 15-16 (quote at 16) (quoting *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981)).

Like the *Barton* doctrine, derivative judicial immunity for trustees and debtors-in-possession is subject to an *ultra vires* exception. *In re Ondova Ltd.*, 914 F.3d at 993 ("Only *ultra vires* actions – actions that fall outside the scope of their duties as trustees – are not entitled to immunity.").

**b. Derivative Judicial Immunity Applies to Appellees**

Appellants challenge whether the theory of derivative judicial immunity applies to Appellees in the first instance. Appellants assert, relying only on an 1890 Supreme Court decision, that "the temporary selection as a trustee of the court for limited purposes does not confer quasi-judicial immunity."[92] This entirely disregards the Fifth Circuit's clear holding in *Ondova* that "[t]rustees are entitled to absolute immunity for all actions taken pursuant to a court order" and "qualified immunity for personal harms caused by actions that, while not pursuant to a court order, fall within the scope of their official duties." *In re Ondova Ltd.*, 914 F.3d at 993. Appellants also assert that the bankruptcy court's holding that immunity extends to Appellees as professionals of the debtor-in-possession is based on inapplicable law.[93] This, too, is based on an apparent misreading of the Fifth Circuit's *Ondova* decision, which clearly indicates that the "derivative theory of judicial immunity" was an independently sufficient basis for its holding that derivative judicial immunity extended to the trustee's attorneys. *Id.* at 994 ("[W]e agree with the district court that this immunity extends to [the trustee]'s attorneys under *both* a derivative theory of judicial immunity and under the *separate* [Texas-law] doctrine of attorney immunity for essentially the same reasons articulated by the district court." (footnotes omitted; emphasis added)) (citing *In re DeLorean Motor Co.*, 991 F.2d at 1241, for its holding that the *Barton* doctrine

---

[92] R. Doc. 15 at 70 (citing *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890) (holding that a merchant appraiser is not an officer of the United States within the meaning of article 2, § 2 of the Constitution)).

[93] *Id.* at 60 (arguing that the bankruptcy court's discussion of *Ondova* "failed to reference footnote 11," in which the Fifth Circuit cites a case "holding that attorneys are entitled to immunity under Texas law from suit by non-clients," without identifying a "comparable provision under Louisiana law").

applied to the trustee's attorneys because "court appointed officers who represent the estate, are the functional equivalent of a trustee, where as here, they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets").

Appellants further argue that Appellees were not entitled to derivative judicial immunity as "arms of the court," because "their role in serving [the June 7] Order was no more 'quasi-judicial' than is anyone who serves a document in a bankruptcy case."[94]  This is incorrect for two reasons.  First, service of orders, like the June 7 Order, is consistent with Appellees' duties as the Archdiocese's court-approved professionals.  This entitles them to at least qualified derivative judicial immunity.  *Id.*  Second, the Appellees served the June 7 Order "'under the supervision and subject to the order of the bankruptcy judge.'"  *Id.* (quoting *Boullion*, 639 F.2d at 214).  The bankruptcy court's order appointing Donlin Recano as claims-and-noticing agent specifically authorized it to "provide notice and service of pleadings, orders, and notices limited to those matters formally filed on the docket of this [c]ase."[95]  And as for Jones Walker and Mr. Mintz, Appellants cannot dispute that the bankruptcy court ordered "*counsel for the [d]ebtor [to] serve this [o]rder via first-class U.S. Mail on those parties in interest who will not receive service via this [c]ourt's CM/ECF system*"[96] – though they vehemently contest the proper recipients of that service.  In addition, Appellees sought, and received, further instruction from the court as to service of the order on at least two occasions.[97]  Thus, there can be no doubt that, as Appellees served the June 7 Order at the bankruptcy court's direction and under the court's continued supervision and guidance, they are entitled to derivative absolute judicial immunity.[98]

---

[94] R. Doc. 19 at 18.

[95] Bankr. E.D. La. No. 20-10846, R. Doc. 188 at 2.

[96] Bankr. E.D. La. No. 20-10846, R. Doc. 1574 at 5 (emphasis added).

[97] *See infra* § II(B)(3)(d).

[98] Because the Court agrees that Appellees had absolute immunity, it rejects Appellant's argument that summary judgment was premature "because there was no discovery permitted to determine whether or not defendants

### c. **The *Ultra Vires* Exception Does Not Apply**

Appellants contend in the alternative that the *ultra vires* exception to derivative judicial immunity applies. Appellants assert that, "[w]here an official claiming immunity is alleged to have acted outside of the scope of official functions, or exceeded his authority, the doctrine of quasi-judicial immunity does not apply."[99] But the same decision Appellants cite in support of their formulation of the *ultra vires* exception belies it. The *Ondova* district court explained that "merely alleging that the Trustee's actions were wrongful, improper, or ineffective is not sufficient to overcome immunity. Plaintiff must plausibly allege that the nature of the Trustee's conduct is inconsistent with his authority." *In re Ondova Ltd.*, 2018 WL 580151, at *2 (footnote omitted). The *Ondova* bankruptcy court emphasized that the focus is on the nature of the alleged conduct:

> Showing that a bankruptcy trustee's actions were potentially wrongful or improper does not equate to acting outside his authority or except him from quasi-judicial immunity. It is the *type* of conduct that triggers immunity. If the Bankruptcy Trustee's acts were entirely foreign to the duties of a trustee – for example, if the Bankruptcy Trustee had punched [the plaintiff] in the face or ran over him with a car – clearly, immunity would *not* apply. These would not be 'trustee acts' performed in his official capacity or in the discharge of his duties.

*In re Ondova Ltd.*, 2017 WL 477776, at *18 (footnote omitted; most emphasis omitted). Here, Appellants "merely allege" that Appellees' service of the June 7 Order was "wrongful, improper, or ineffective." *In re Ondova Ltd.*, 2018 WL 580151, at *2. They have not alleged, nor could they

---

did, indeed[,] properly comply with the [b]ankruptcy [c]ourt's [June 7] Order." R. Doc. 15 at 70. Because "judicial immunity is an immunity from suit, not just from ultimate assessment of damages," *Mireles v. Waco*, 502 U.S. 9, 11 (1991), "the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982)). The Supreme Court has thus held that courts should make threshold immunity determinations before allowing discovery on motions for summary judgment. *Harlow*, 457 U.S. at 818.

   This is true even if Appellees are entitled only to qualified immunity. Because the Court finds, based on record evidence, that the bankruptcy court indeed ordered appellees to serve the June 7 Order on the persons listed in the mailing matrix, *see infra* § II(B)(3)(d), and "the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment," *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990), the bankruptcy court did not abuse its discretion in denying Appellants' request for additional discovery. Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 76 at 16-18.

   [99] R. Doc. 15 at 71 (citing, *inter alia*, *In re Ondova Ltd.*, 2018 WL 580151, at *2).

show, that Appellees' service of the order was "inconsistent with [their] authority," *id.*, because the type of conduct underlying Appellants' claims – service of an order on parties in interest – falls squarely within Appellees' duties as counsel to the debtor-in-possession and claims-and-noticing agent.

### d.   Appellees Complied With the Bankruptcy Court's Instructions

Even if the *ultra vires* exception applied to the type of conduct alleged in Appellants' complaint, Appellees' service of the June 7 Order on the persons listed on the mailing matrix was undertaken in good faith and consistent with the bankruptcy court's instructions, and thus cannot be *ultra vires*. The June 7 Order instructed Appellees to serve the order "on those parties in interest who will not receive service via this [c]ourt's CM/ECF system."[100]  Appellants place great emphasis on the fact that "the service instructions said nothing about serving the 'entire mailing matrix.'"[101]  This is a distinction without a difference. The recipients identified in the order – "parties in interest who will not receive service via this [c]ourt's CM/ECF system,"[102] plus, implicitly, those who *would* receive service via the CM/ECF system – are coextensive with the recipients listed in the mailing matrix: "all known creditors and other parties in interest."[103]  Even if the service instructions in the June 7 Order were "truly" ambiguous (which this Court finds they are not), this Court would defer to the bankruptcy court's interpretation of its own order, holding that it "instructed the June 7, 2022 Order to be served on all parties in interest identified by the [m]ailing [m]atrix."[104]  *See In re AKD Invs., L.L.C.*, 79 F.4th 487, 491 (5th Cir. 2023) ("While we

---

[100] Bankr. E.D. La. No. 20-10846, R. Doc. 1574 at 5.
[101] R. Doc. 15 at 58 (emphasis omitted).
[102] Bankr. E.D. La. No. 20-10846, R. Doc. 1574 at 5.
[103] Local Rule 1007-2(A) defines the mailing matrix as "containing the correct name and address of all known creditors and other parties in interest."  Nonetheless, Appellants repeatedly assert that the June 7 Order is not "one of the *only* types of orders that should be served on all 'parties in interest'" under the federal and local rules.  R. Doc. 19 at 28 (emphasis in original).  But Local Rule 2002-1 and Federal Rule of Bankruptcy Procedure 2002 set *minimum* notice requirements for certain pleadings; they do not limit service on the entire mailing matrix to those pleadings.
[104] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 76 at 15.

usually review the bankruptcy court's interpretation of its own orders *de novo*, we 'defer to the bankruptcy court's reasonable resolution of ... ambiguities in those documents.  However, the documents must truly be ambiguous, even in light of other documents in the record, before we will defer.'" (internal citation and alteration omitted) (quoting *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000)).

Moreover, because Appellees provided periodic reporting to the bankruptcy court and sought further instruction regarding the service of the June 7 Order, there is ample record evidence showing that the bankruptcy court intended for the June 7 Order to be served on the mailing matrix. When a Jones Walker attorney sought clarification of the bankruptcy court's service instructions via email the day after the order was issued, the bankruptcy court's law clerk responded: "Please serve the [June 7] Order on all parties in interest who will not receive service via the CM/ECF system.  *Do not limit it to the parties identified in the [s]pecial [n]otice [l]ist.*"[105]  In response, counsel for the Committee "request[ed] an opportunity to discuss with the [bankruptcy court] what it sees as issues with the service of the [June 7] Order *on the entire creditor matrix* and the prospect of service of the Committee reconstitution notice as a substitute," which the clerk indicated could be discussed at an upcoming status conference on June 13, 2022.[106]

---

[105] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-7 at 3.

The "special notice list," which was specially approved by the bankruptcy court, includes the names and addresses of a more select set of parties in interest on whom most orders in the bankruptcy case would be served, Bankr. E.D. La. No. 20-10846, R. Doc. 22, so as to reduce the costs associated with service.

Appellants challenge the sufficiency of the law clerk's email, authenticated by the affidavit of Brandon Naquin (Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-2 at 2), as summary-judgment evidence and assert, without explanation, that "it would be hearsay, nevertheless." R. Doc. 19 at 21.  Federal Rule of Civil Procedure 56 does not require summary-judgment evidence be produced in admissible form.  "It is enough that the evidence can be made admissible for trial." *Poincon v. Offshore Marine Contractors, Inc*., 9 F.4th 289, 299 n.4 (5th Cir. 2021) (citing *Celotex Corp.*, 477 U.S. at 324).  Accordingly, the emails need not be authenticated to serve as summary-judgment evidence because Appellees have explained Mr. Naquin's personal knowledge of the emails and how the emails could be authenticated at trial (Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 26 at 3-4), which is sufficient.  *See* Fed. R. Civ. P. 56, cmt. to subdivision (c) ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

[106] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-7 at 2 (emphasis added).

A careful reading of the transcript of that conference, together with the preceding email exchange, makes clear that the bankruptcy court did intend for Appellees to serve the order on the entire mailing matrix, despite Appellants' contention that "[t]he [b]ankruptcy [c]ourt never said this or anything close to it, and this Court will not find any such statement in the transcript."[107] Mr. Mintz began discussion of the "service issues" raised by counsel for the Committee:

> One issue that we have, of course, is your Honor's order says not that it should be sent, this, this order should not be sent, or *it should be sent to the whole matrix … which would include sex abuse claimants* who we have to be very careful on how those are served, who serves them, how it's done.[108]

When Mr. Mintz stated that "[the June 7 Order] should be sent to the whole matrix," apparently correcting his immediately preceding statement that it "should not be sent [to the mailing matrix]," the bankruptcy judge responded in the affirmative,[109] and no one else present objected or sought clarification, because the discussion was predicated on the parties' common understanding that the June 7 Order instructed Appellees to serve the order on the "entire creditor matrix."[110]  After the court explained why it chose not to limit service of the order to the special notice list,[111] the Committee's counsel proposed that the court substitute service of the notice of reappointment[112] instead of the June 7 Order moving forward to preserve the anonymity of the removed Committee

---

[107] R. Doc. 15 at 58.

[108] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-8 at 14-15.

[109] The relevant portion of the transcript reads as follows:

> MR. MINTZ: … One issue that we have, of course, is your Honor's order says not that it should be sent, this, this order should not be sent, or it should be sent to the whole matrix –
> THE COURT: Uh-huh (indicating an affirmative response).
> MR. MINTZ: – which would include sex abuse claimants who we have to be very careful on how those are served, who serves them, how it's done.

*Id.*

[110] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-7 at 2.

[111] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-8 at 14-15 ("I know that there's a limit notice order in this case and – but I – it was the [c]ourt's desire to make sure because this dealt with the composition of the Committee and its large constituency, I just wanted to make sure that, you know, that constituency got served.  These are, you know, the Committee represents their interests as a – as a – as a class in this proceeding and … like I said, despite the limit notice, this one affects them directly and I wanted to make sure that they got notice of that, of the change.").

[112] Bankr. E.D. La. No. 20-10846, R. Doc. 1575.

members.[113]  In response, Mr. Mintz expressed that Appellees were "hesitant" to serve the notice

of reappointment in place of the June 7 Order and suggested redacting the names of the Committee

members from the order instead.[114]  After some discussion, the bankruptcy court asked counsel for

the Committee whether he was "open to a redaction of the [June 7] order," as suggested by Mr.

Mintz, and counsel for the Committee agreed.[115]  The court thus resolved that the June 7 Order

would be redacted[116] – as it would be served on the entire mailing matrix – and moved on to discuss

who would serve the abuse-survivor constituency.[117]

　　　　According to Appellants, this exchange shows that "the bankruptcy court's intention was

clearly that the abuse-survivor constituency (at the time approximately 450 people) be served."[118]

Nothing in the transcript of the June 13 status conference indicates that the order was meant to be

served exclusively on that constituency.[119]  The status conference was not about who to serve, but

*what* would be served.  The only alternatives to "service of the [June 7] Order *on the entire creditor*

*matrix*"[120] discussed were service of the notice of reappointment or service of a redacted version

of the June 7 Order.  The bankruptcy court chose the latter.  And service only on the abuse-survivor

constituency would conflict with the bankruptcy court's instruction, in the June 7 Order itself, that

---

[113] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-8 at 15 "([W]e would ask the [c]ourt to consider that the notice of reappointment that the U.S. Trustee issued be the document that is served on a going-forward basis, understanding from Mr. Mintz that some service has already been accomplished … because we have considered as a[n] essential matter throughout this case that to the extent possible the identities of survivors be kept confidential.").

[114] *Id.* at 17-18 ("[W]e would be hesitant to say that the answer is only serve the, the reconstitution [notice]. … I think your Honor's order is incredibly important for people to understand what's happening in the case, where it's going.  If it needs to be redacted because we want to remove the people's names, I can be okay with that ….").

[115] *Id.* at 20-21 ("[T]hat would be a satisfactory response to the concern that we have.").

[116] *Id.* at 21 ("Let's do that, then.  So for the, the order that's going to go out and will be served – I know it's been served to some people – but particularly to this class of claimants let's go ahead and redact those four names.").

[117] *Id.* at 21-23.

[118] R. Doc. 15 at 68.

[119] This class of recipients was discussed at length during the status conference, but only in relation to the bankruptcy court's reasons for not limiting service of the June 7 Order to the special notice list (Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-8 at 14-15) and concerns regarding the anonymity of the Committee members named in the June 7 Order (*id.* at 15-20) and who should serve the order to those recipients (*id.* at 21-25).

[120] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 11-7 at 2 (emphasis added).

the order be served on all parties in interest, which, by definition, includes parties other than the abuse-survivor constituency.[121]

Considering Appellees' execution of the June 7 Order against the backdrop of these events and in line with the bankruptcy court's instructions, the Court finds that Appellees acted in good faith[122] and in compliance with the bankruptcy court's orders. Thus, Appellants have failed to show that the Appellees' service of the June 7 Order was *ultra vires*. Because the Court holds that the bankruptcy court's grounds for granting summary judgment are sufficient, it need not address Appellees' arguments regarding federal preemption and the merits of Appellants' tort claims.[123]

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the bankruptcy court's orders denying Appellants' motion to recuse the bankruptcy judge,[124] denying Appellants' motion for remand,[125] and granting summary judgment in favor of Appellees[126] are AFFIRMED.

---

[121] The term "party in interest," as used in the context of Chapter 11 bankruptcies, generally refers to "entities that are potentially concerned with or affected by a proceeding." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 278 (2024) (discussing the history, meaning, and "capacious" nature of this term).

Appellants also argue that Appellees failed to serve the June 7 Order on "parties in interest" as instructed because, according to Appellants, individuals with no pecuniary interest in the Archdiocese's bankruptcy received copies of the order. R. Doc. 15 at 64-67. This argument is tantamount to an objection to the contents of the mailing matrix, which have nothing to do with the Appellees' interpretation and execution of the June 7 Order. Instead, Appellants' assertion that "[t]he overwhelming content of [the] matrix is improperly redacted," R. Doc. 15 at 18, constitutes a collateral attack on the bankruptcy court's order creating and sealing the mailing matrix (Bankr. E.D. La. No. 20-10846, R. Doc. 177) and does not go toward Appellees' alleged conduct. No objection to the content of the matrix was ever made timely and this appeal is not the vehicle to raise one.

[122] Appellants assert that Jones Walker's June 8 email "illustrate[s]" that Appellees "were well aware that service of the [June 7] Order on the entire mailing matrix was improper." R. Doc. 15 at 73. To the contrary, that Appellants sought further guidance of the bankruptcy court regarding service of the order and acted in accordance with that guidance demonstrates that they sought to faithfully carry out the bankruptcy court's orders.

[123] R. Doc. 18 at 70-77.

[124] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 51.

[125] Bankr. E.D. La. Adv. No. 23-1018, R. Doc. 60.

[126] Bankr. E.D. La. Adv. No. 23-1018, R. Docs. 76; 78.

New Orleans, Louisiana, this 5th day of March, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE